## SHAFER v. KEELEY ICE CREAM CO.

No. 4129.   Decided March 4, 1925.   (234 P. 300.)

1. MASTER AND SERVANT—ACTS OF PERSONS DISTRIBUTING CANDY FROM DEFENDANT'S PARADE FLOAT HELD BINDING ON DEFENDANT. Young women on defendant's float which participated in a parade, who were there for purpose of distributing candy among spectators on street, were agents of the defendant for that purpose, and anything done in line of duty by them would be binding on defendant.

2. NEGLIGENCE—PROXIMATE CAUSE OF INJURY QUESTION FOR JURY. The question of what is, or is not, proximate cause of injury is for the jury, where the facts are such that reasonable men might draw different conclusions.[1]

3. MUNICIPAL CORPORATIONS—QUESTIONS OF NEGLIGENCE IN THROWING CANDY FROM PARADE FLOAT AND PROXIMATE CAUSE OF INJURY TO SPECTATOR, BY SCRAMBLING CROWD OF BOYS, HELD FOR JURY. Where young women on defendant's float in parade distributed candy from float which was followed by a crowd of boys who would rush and scramble among spectators to secure candy, and plaintiff spectator was knocked over and injured in rush, *held* that court's refusal to submit question whether acts of defendant were negligent, and if negligent were proximate cause of plaintiff's injury, was error.[2]

4. APPEAL AND ERROR—INSTRUCTION ON DUTY OF PEDESTRIAN, THOUGH NOT RENDERED NECESSARY BY FACTS, HELD NOT PREJUDICIAL ERROR IN VIEW OF QUESTION SUBMITTED TO JURY. In action for injury to spectator at parade, suffered during scramble by boys for candy thrown from defendant's float, instruction as to duty of pedestrians leaving sidewalk and entering on street, though not called for by the evidence, was not prejudicial error, in view of court's submission of question whether plaintiff was injured by being hit with a piece of such candy.

5. APPEAL AND ERROR—INSTRUCTION AS TO ASSUMPTION BY PARADE SPECTATOR OF ORDINARY RISK HELD NOT PREJUDICIAL ERROR, WHERE EVIDENTLY INTENDED TO BE LIMITED TO ISSUE THEN BEING SUBMITTED. In action for injuries to spectator at parade, suffered during scramble by boys for candy thrown from defendant's float, an instruction as to assumption by spectators of all ordinary risks, though not applicable to the facts, was not prejudicial error, where evidently intended to relate only to issue of plaintiff being struck by a piece of such candy. CHERRY, J., dissenting.

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie*, Judge.

Action by Hattie Shafer against the Keeley Ice Cream Company. Judgment for defendant, and plaintiff appeals.

[1] *Anderson* v. *Bransford*, 39 Utah, 256, 116 P. 1023.
[2] *Edgar* v. *Railroad*, 32 Utah, 330, 90 P. 745, distinguished.

REVERSED AND REMANDED, with directions.

*J. W. McKinney* and *Powers, Riter & Cowan,* all of Salt Lake City, for appellant.

*M. E. Wilson* and *H. S. Cartwright,* both of Salt Lake City, for respondent.

GIDEON, C. J.

In this action plaintiff (appellant) seeks damages for personal injuries, alleged to have been sustained by reason of certain acts of defendant (respondent). In this opinion we shall designate the parties as plaintiff and defendant.

On or about October 5, 1922, there was had in Salt Lake City, under a permit from the city authorities, what can be designated a commercial or electrical parade. The parade consisted of numerous floats advertising the wares of different merchants, and other industries of the city. The defendant, Keeley Ice Cream Company, had a float in that parade. On the float were a number of girls. These girls threw small bits of candy promiscuously among the people gathered along the streets. As the candy was thrown into the crowds numerous boys, between the ages of 8 and 17 years, attracted thereby, would rush and scramble to get possession of it.

The floats that participated in the parade were first assembled on the corner of State and Third South streets in said city. From that point the parade moved north on State street three blocks to South Temple street, thence west one block on South Temple street, and then south on Main street. The testimony shows that many of the residents in and about Salt Lake City had gathered along the line of march to view the parade. The plaintiff, an elderly woman, came with her daughter and her daughter's family to see the parade. They were standing near the sidewalk on the west side of Main street approximately 1½ blocks south of South Temple street. Automobiles were parked along the curbing. The plaintiff and the other members of her party were standing in a space

between two automobiles. These automobiles were facing the parade and had been backed against the curb. The space between the two automobiles where plaintiff was standing was approximately seven feet. There were no others standing in close proximity to plaintiff and her family. Others were standing further out in the street in front of plaintiff and others on the sidewalk behind her. From the beginning of the parade the young women on defendant's float had been continuously throwing small packages of candy and ice cream among the people along the line of the parade. The result of scattering these small pieces of candy was that this particular float was surrounded and followed by a rushing, scrambling crowd of young boys. Every time a handful of candy was thrown on the street or into the crowds this aggregation of youth would make a grand rush to get part of the candy. The reader will experience little difficulty in visualizing the scene.

As defendant's float passed the place where plaintiff was standing, some of the candy was thrown in her direction followed by the usual rush and scramble of the boys for its possession. The testimony of plaintiff indicates that, just at this point on the line of march, one of the young ladies on the float evidently recognized some one among the spectators near where plaintiff was standing and threw a second and larger handful of candy in her direction. Another scramble for its possession followed and, in the rush that ensued, plaintiff was knocked over by a number of the boys following the float, and suffered severe personal injuries.

The views of the learned trial judge are clearly stated in his ruling upon a motion for nonsuit interposed by defendant at the close of plaintiff's testimony. The court said:

"I have arrived at the conclusion that the injuries occurring, the breaking of the leg and such other like matters as might be proven, caused not directly by the acts of the defendant, but as a secondary result perhaps, but caused in fact by the struggling of the boys and young men pushing and scrambling in the crowd, cannot be recovered for."

Upon the submission of the case the trial court, among other things, instructed the jury that they were not to consider any

testimony bearing upon the question of plaintiff being injured by the acts of the boys in struggling to get possession of the candy thrown from defendant's float. The ruling of the court upon the motion for nonsuit and the instructions of the court on this phase of the case constitute the principal errors assigned.

The questions presented by these assignments may, for convenience be considered under two heads: (a) Did the acts of the defendant present any question of negligence to be submitted to the jury? (b) If defendant's acts were negligent, was the injury to plaintiff so related to such negligent acts as to justify submitting to the jury the question of whether such acts were the proximate cause of the injury?

Defendant's counsel strenuously insists that the acts of the Keeley Ice Cream Company in participating in this parade and distributing candy in the manner it did were lawful; that the happening of the accident could not be foreseen, and was not the usual and ordinary result of the acts complained of, but that the injury, if any, sustained by plaintiff, was the result of an intermediate cause in no way directly connected with defendant's acts.

It could subserve no good purpose to here attempt to set out the various definitions and distinctions stated by courts and text-writers of what is and what is not the proximate cause producing an injury. Most authorities agree that the term "proximate cause" is not susceptible of a definite comprehensive definition, and conclude that each case, to a very large extent, must be determined on its own peculiar facts.

In 1 Shear. & Redf. Law of Neg. (6th Ed.) § 26a, it is said:

"It is uniformly held that to be actionable it is not requisite that the injury should be the necessary or the direct or immediate result of the wrongful act or omission. Nor is it requisite that it should be the 'usual,' 'ordinary,' or 'probable' result. But it is often said, as an assignment of a reason, among others, for the particular decision that the injury is or is not the 'usual,' 'ordinary,' or 'probable' consequence of the neglect, and hence such as could or could not have been reasonably foreseen. If the injury is a natural result of the neglect of duty it is sufficient. The injury where actionable generally is the 'usual,' 'ordinary,' or 'probable' result, and when it is so it is also such as could have been foreseen

by one of ordinary prudence in the defendant's position at the time as probable. The term 'natural' as used in the general rule * * * rightly understood means according to the operation of natural laws, which, in the particular case, may be unusual and extraordinary in common experience. If it were otherwise, because one had often been guilty of some breach of duty without entailing injurious consequences, he must be held not responsible when it does occur. We are acquainted with no well-considered case holding that injurious consequences, otherwise the natural and proximate result of the defendant's negligence, are not so unless they are the 'usual,' 'ordinary,' or 'probable' result, and such as are capable of being foreseen. To so hold would be indeed to formulate a new rule by the substitution of these terms for natural and proximate."

The Supreme Court of Iowa, in *Burk* v. *Creamery Package Mfg. Co.*, 126 Iowa, 736, 102 N. W. at page 795 (106 Am. St. Rep. 377) says:

"With reference to these, and to all other cases bearing upon the subject, it may be said that no one has as yet given a very satisfactory definition of proximate cause. Indeed, one must of necessity look to practical distinctions on the subject, rather than to merely academic or theoretical ones, and, after all is said, each case must be decided largely on the special facts belonging to it."

In *Bole* v. *Pittsburgh Athletic Co.*, 205 F, at page 470, 123 C. C. A. 538 (46 L. R. A. [N. S.] 602), the Circuit Court of Appeals, Third Circuit, in considering the rule "Causa proxima, non remota spectatur," says:

"It would answer no good purpose to indulge in the subtleties of abstract reasoning to which this maxim so often gives rise. In its juridical sense, it would seem incapable of such definition as would furnish a practical test of liability or nonliability in a given case. The terms used do not accurately connote the conceptions they are intended to cover. Whether 'proximate' means 'nearest' in point of time or space to the result complained of, depends upon circumstances. 'Primary' may sometimes better describe the efficient or responsible cause of a legal liability—though first and in point of time the most remote. In many, if not in most, cases, that cause of an injury to which legal liability attaches may be better described as the 'efficient' cause. So many elements, however, may enter into the determination of what is the efficient cause, and so long a train of antecedents may come under consideration 'but for' the happening of any one of which the result complained of would not have occurred, that we may still be involved in the difficulties of selecting from the train of antecedents the one to which should attach the legal liability sought to be imposed. The practical ap-

plication of the rule must depend upon the circumstances of each individual case."

The opinion in that case strongly supports the contention of plaintiff in the instant case that the question of responsibility of defendant for the injury to plaintiff should have been left to the jury.

The Supreme Court of the United States, in discussing the question here under consideration, in *Milwaukee, etc., Ry. Co.* v. *Kellogg,* 94 U. S. 469, at page 474 (24 L. Ed. 256), says:

"The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 Bl. Rep. 892. The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

In *Anderson* v. *Bransford,* 39 Utah, 256, 116 P. 1023, in the course of the opinion, this language is found:

"It is true that the question of proximate cause is ordinarily one of fact for the jury. This is so because of different conclusions generally arising on a conflict of the evidence, or because of different deductions or inferences arising from undisputed facts, in respect to the question of whether the injury was the natural and probable consequence of the proved negligence or wrongful act, and ought to have been foreseen in the light of the attending circumstances. Where, however, there is no such conflict, and where but one deduction or inference under the evidence is permissible, then the question of proximate cause is one of law."

Now let us apply these general statements · found in the

foregoing cases to the particular facts disclosed by this record.

The defendant had under its control the distribution of the candy from its float. If, in the distribution in the manner it had selected, such distribution resulted in causing conduct on the part of these young boys which might result in or cause injury, a situation, in our judgment, is presented which should have been submitted to the jury under proper instructions to determine whether the injury to plaintiff was caused by the negligence of defendant, and whether such negligent acts were the proximate cause of plaintiff's injury. The plaintiff was not a trespasser, nor was she unlawfully upon the street at the time the injury occurred. The fact of standing on the street was not the cause of the injury, nor was the injury one resulting, or one reasonably to be expected, from the mere passing of the parade. The boys following the float were in action under the direct observation of the agents of defendant distributing the candy from that particular float. It is not therefore necessary to say that the defendant should have foreseen that the boys would act as they did. The agents of defendant actually saw and observed the conduct of those boys as the float proceeded on its way in the parade. By defendant's conduct it created a condition that resulted in the injury. The court rightly in our judgment, instructed the jury that the young women on the float were the agents of defendant, and were there for the purpose of distributing this candy among the spectators along the line of the parade. Necessarily, anything done in the line of duty by the representatives of defendant would be binding upon defendant.

If it be conceded that the mere act of throwing the candy from the float upon the street, where the viewers of the parade were standing was, in and of itself an innocent act and not one constituting negligence, it does not necessarily follow that it was not negligent to so throw the candy when it resulted in creating a condition along the route of the parade that might, and, in this particular instance, did result in injury to one rightfully on the street. As we view this record, it is not so much what might ordinarily be expected to result from

the acts of defendant. It was a condition then existing, and which was apparent to any and every one on this float as it proceeded along the line of march. The parade had traversed 5½ blocks, and this crowd of boys had followed this particular float most, if not all, of that distance. One of the young women on the float testified that the boys would grab or catch the candy as the pieces were thrown from the float and by reason of such fact it became and was necessary to throw the candy over the heads of the boys in order to distribute the same among the people along the parade. The testimony also is that the boys would rush in among the people to grab the particles of candy as they fell. The acts of the boys were not those of fully grown responsible men. On the contrary, the boys were of that thoughtless age that while engaged in the pursuit of pleasure, they paid little heed to their surroundings or what might result to others who happened to be in the way of the object sought. This fact was apparent from the presence of the boys surrounding the float. The agents of defendant, therefore, must be held to have been aware of such fact at the time defendant's float was passing the place where plaintiff was standing and was injured. If the facts are such that reasonable men might draw different conclusions or deductions or inferences, the question of what is or what is not the proximate cause of the injury is for the jury. *Anderson* v. *Bransford,* supra. The authorities are all agreed on that question.

We are of opinion that the trial court erred in refusing to submit to the jury the questions whether the acts of defendant were negligent and whether its acts, if negligent, were the proximate cause of plaintiff's injury. Defendant has cited and relies upon the opinion of this court in *Edgar* v. *Railroad,* 32 Utah, 330, 90 P. 745, 11 L. R. A. (N. S.) 738, 125 Am. St. Rep. 867. Extensive quotations are made from the opinion in that case in defendant's brief. The general rules of law stated in that opinion, and quoted in the brief, undoubtedly reflect the weight of authority. But general principles or rules of law announced in decisions of courts must be considered in connection with the

facts of the case then under consideration. The facts in the Edgar Case are in no way analogous to the facts in the instant case. It may be seriously doubted whether the doctrine of proximate cause was the controlling or decisive question in that case. Mr. Justice Straup, in a concurring opinion says:

"I think the decisive question is insufficiency of evidence to charge the defendant with the commission of the acts of negligence alleged in the complaint, rather than the proximate or intervening cause of injury. On that ground I concur in the judgment of affirmance."

In any event, the facts there under consideration do not make the opinion a binding authority in the present case. The same may be said in the case of *Anderson* v. *Bransford,* supra.

Among other cases cited by defendant are *Snyder* v. *Colo. Springs, etc., Ry. Co.,* 36 Colo. 288, 85 P. 686, 8 L. R. A. (N. S.) 781, 118 Am. St. Rep. 110; *Moody* v. *Gulf Refining Co.,* 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243; *Cole* v. *German Savings & Loan Soc.,* 124 F. 113, 59 C. C. A. 593, 63 L. R. A. 416. These cases are readily distinguishable from the instant case. The difference or distinction, in our judgment, is this: The acts or conduct of the party or parties that immediately resulted in the injuries in those cases were not induced or set in motion by any act or conduct of the defendants. Certain language used by the Supreme Court of Colorado in the case of *Snyder* v. *Colo. Springs, etc., Ry. Co.,* supra, clearly indicate the distinction. In the opinion it is said:

"It is apparent from the record in this case that the proximate cause of the injury to plaintiff was the action of the irritated passenger, and that this cause could not be anticipated by defendant or its agents."

The facts, as they appear from the opinion in that case, were that the plaintiff, who was a passenger in a crowded car on defendant's railway, was resting his hand on the jamb of the door. People were standing between him and the door, and some were standing on the steps. The conductor, in pushing his way through the crowd, pressed plaintiff against a third person on a seat, and that person in turn gave plaintiff

a push throwing him from the car. It will thus be seen in that case nothing defendant did actually put the irate passenger in action. In the instant case the acts of defendant in throwing the candy put the boys in action.

Error is assigned because of the giving by the court of instructions numbered 12 and 13.

The effect of instruction No. 12 is that the law places upon pedestrians, who leave the sidewalk and enter upon that portion of a street commonly used and intended for vehicles, the duty of continuous observation and care to protect themselves from injury. The court had submitted to the jury the question whether plaintiff had suffered injury to the face or eye, by being hit with a piece of candy thrown from defendant's float, concerning which there had been some testimony. It is no doubt true that instruction No. 12 was intended to have some bearing upon this particular question. Otherwise we are unable to find any testimony in the record that called for that instruction or any like instruction. In any event, the giving of it did not constitute prejudicial error.

The complaint respecting instruction No. 13 relates particularly to that part reading:

"That the bystanders, including the plaintiff, who had voluntarily congregated for the purpose of witnessing said parade, assumed the risk of all ordinary dangers incident to such a parade, and if you find that plaintiff's injury, if any, was the result of such an ordinary danger, then I instruct you that she assumed the risk thereof and cannot recover."

That instruction was doubtless intended to relate only to the issue then being submitted to the jury, that the plaintiff was injured by a piece of candy thrown from defendant's float. It would hardly be contended that to be knocked over by boys following a parade, resulting in a broken leg, was an ordinary danger incident to the parade. In any event the instruction would not justify a reversal of the case, as we do not see how it did or could mislead the jury in the determination of the question submitted to it.

For the reasons indicated, the judgment of the district court should be reversed, and the cause remanded with direc-

tions to grant a new trial. Such is the order. Plaintiff to recover costs.

FRICK, J., and DILWORTH WOOLLEY, District Judge, concur.

CHERRY, J., dissents.

THURMAN, J., did not participate herein.

The term of office of Hon. A. J. WEBER, who was Chief Justice, expired before disposition of this cause.