[L.A. No. 30452. In Bank. Aug. 21, 1975.]

RONALD A. WEIRUM et al., Plaintiffs and Appellants, v.
RKO GENERAL, INC., Defendant and Appellant;
MARSHA L. BAIME, Defendant and Respondent.

## COUNSEL

Hollister, Brace & Angle, Hollister & Brace, Robert O. Angle and Richard C. Monk for Plaintiffs and Appellants.

Stearns & Nelson, Stearns, Nelson & LeBerthon, Robert S. Stearns, Lascher & Radar, Edward L. Lascher and Wendy Cole Wilner for Defendant and Appellant.

Benton, Orr, Duval & Buckingham and James F. McGahan for Defendant and Respondent.

## OPINION

**MOSK, J.**—A rock radio station with an extensive teenage audience conducted a contest which rewarded the first contestant to locate a peripatetic disc jockey. Two minors driving in separate automobiles attempted to follow the disc jockey's automobile to its next stop. In the course of their pursuit, one of the minors negligently forced a car off the highway, killing its sole occupant. In a suit filed by the surviving wife and children of the decedent, the jury rendered a verdict against the radio station. We now must determine whether the station owed decedent a duty of due care.

The facts are not disputed. Radio station KHJ is a successful Los Angeles broadcaster with a large teenage following. At the time of the accident, KHJ commanded a 48 percent plurality of the teenage audience in the Los Angeles area. In contrast, its nearest rival during the same period was able to capture only 13 percent of the teenage listeners. In order to attract an even larger portion of the available audience and thus increase advertising revenue, KHJ inaugurated in July of 1970 a

promotion entitled "The Super Summer Spectacular." The "spectacular," with a budget of approximately $40,000 for the month, was specifically designed to make the radio station "more exciting." Among the programs included in the "spectacular" was a contest broadcast on July 16, 1970, the date of the accident.

On that day, Donald Steele Revert, known professionally as "The Real Don Steele," a KHJ disc jockey and television personality, traveled in a conspicuous red automobile to a number of locations in the Los Angeles metropolitan area. Periodically, he apprised KHJ of his whereabouts and his intended destination, and the station broadcast the information to its listeners. The first person to physically locate Steele and fulfill a specified condition received a cash prize.[1] In addition, the winning contestant participated in a brief interview on the air with "The Real Don Steele." The following excerpts from the July 16 broadcast illustrate the tenor of the contest announcements:

"9:30 and The Real Don Steele is back on his feet again with some money and he is headed for the Valley. Thought I would give you a warning so that you can get your kids out of the street."

"The Real Don Steele is out driving on—could be in your neighborhood at any time and he's got bread to spread, so be on the lookout for him."

"The Real Don Steele is moving into Canoga Park—so be on the lookout for him. I'll tell you what will happen if you get to The Real Don Steele. He's got twenty-five dollars to give away if you can get it . . . and baby, all signed and sealed and delivered and wrapped up."

"10:54—The Real Don Steele is in the Valley near the intersection of Topanga and Roscoe Boulevard, right by the Loew's Holiday Theater—you know where that is at, and he's standing there with a little money he would like to give away to the first person to arrive and tell him what type car I helped Robert W. Morgan give away yesterday morning at KHJ. What was the make of the car. If you know that, split. Intersection of Topanga and Roscoe Boulevard—right nearby the Loew's Holiday Theater—you will find The Real Don Steele. Tell him and pick up the bread."

---

[1] The conditions varied from the giving of a correct response to a question to the possession of particular items of clothing.

In Van Nuys, 17-year-old Robert Sentner was listening to KHJ in his car while searching for "The Real Don Steele." Upon hearing that "The Real Don Steele" was proceeding to Canoga Park, he immediately drove to that vicinity. Meanwhile, in Northridge, 19-year-old Marsha Baime heard and responded to the same information. Both of them arrived at the Holiday Theater in Canoga Park to find that someone had already claimed the prize. Without knowledge of the other, each decided to follow the Steele vehicle to its next stop and thus be the first to arrive when the next contest question or condition was announced.

For the next few miles the Sentner and Baime cars jockeyed for position closest to the Steele vehicle, reaching speeds up to 80 miles an hour.[2] About a mile and a half from the Westlake offramp the two teenagers heard the following broadcast: "11:13—The Real Don Steele with bread is heading for Thousand Oaks to give it away. Keep listening to KHJ . . . . The Real Don Steele out on the highway—with bread to give away—be on the lookout, he may stop in Thousand Oaks and may stop along the way . . . . Looks like it may be a good stop Steele—drop some bread to those folks."

The Steele vehicle left the freeway at the Westlake offramp. Either Baime or Sentner, in attempting to follow, forced decedent's car onto the center divider, where it overturned. Baime stopped to report the accident. Sentner, after pausing momentarily to relate the tragedy to a passing peace officer, continued to pursue Steele, successfully located him and collected a cash prize.

Decedent's wife and children brought an action for wrongful death against Sentner, Baime, RKO General, Inc. as owner of KHJ, and the maker of decedent's car. Sentner settled prior to the commencement of trial for the limits of his insurance policy. The jury returned a verdict against Baime and KHJ in the amount of $300,000 and found in favor of the manufacturer of decedent's car. KHJ appeals from the ensuing judgment and from an order denying its motion for judgment notwithstanding the verdict. Baime did not appeal.[3]

The primary question for our determination is whether defendant owed a duty to decedent arising out of its broadcast of the giveaway

---

[2] It is not contended that the Steele vehicle at any time exceeded the speed limit.

[3] Plaintiffs filed a cross-appeal from an order entered after judgment denying them certain costs against Baime and KHJ. They do not assert before this court that the order was erroneous, and we shall therefore affirm the order on the cross-appeal.

contest. ■ The determination of duty is primarily a question of law. (*Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 307 [29 Cal.Rptr. 33, 379 P.2d 513] (overruled on other grounds in *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 748 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]).) It is the court's "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, *Palsgraf Revisited* (1953) 52 Mich.L.Rev. 1, 15.) While the question whether one owes a duty to another must be decided on a case-by-case basis,[4] every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct. (*Hilyar* v. *Union Ice Co.* (1955) 45 Cal.2d 30, 36 [286 P.2d 21].) However, foreseeability of the risk is a primary consideration in establishing the element of duty. (*Dillon* v. *Legg, supra,* 68 Cal.2d 728, 739.) Defendant asserts that the record here does not support a conclusion that a risk of harm to decedent was foreseeable.

While duty is a question of law, foreseeability is a question of fact for the jury. (*Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277 [40 Cal.Rptr. 812].) ■ The verdict in plaintiffs' favor here necessarily embraced a finding that decedent was exposed to a foreseeable risk of harm. It is elementary that our review of this finding is limited to the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury.

■ We conclude that the record amply supports the finding of foreseeability. These tragic events unfolded in the middle of a Los Angeles summer, a time when young people were free from the constraints of school and responsive to relief from vacation tedium.

---

[4]Defendant urges that we apply the factors enumerated in *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 865 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], in determining whether it owed a duty to decedent. In that case, however, the primary issue was whether a duty was to be imposed upon the defendant notwithstanding the absence of privity, and we therefore examined considerations appropriate to that contractual framework. For example, the first of the enumerated elements was the extent to which the transaction was intended to affect the plaintiff. Such a consideration manifestly fails to illuminate our inquiry in the present case. Generally speaking, standards relevant to the determination of duty in one particular situation may not be applied mechanically to other cases.

Seeking to attract new listeners, KHJ devised an "exciting" promotion. Money and a small measure of momentary notoriety awaited the swiftest response. It was foreseeable that defendant's youthful listeners, finding the prize had eluded them at one location, would race to arrive first at the next site and in their haste would disregard the demands of highway safety.

Indeed, "The Real Don Steele" testified that he had in the past noticed vehicles following him from location to location. He was further aware that the same contestants sometimes appeared at consecutive stops. This knowledge is not rendered irrelevant, as defendant suggests, by the absence of any prior injury. Such an argument confuses foreseeability with hindsight, and amounts to a contention that the injuries of the first victim are not compensable. ■ "The mere fact that a particular kind of an accident has not happened before does not . . . show that such accident is one which might not reasonably have been anticipated." (*Ridley* v. *Grifall Trucking Co.* (1955) 136 Cal.App.2d 682, 686 [289 P.2d 31].) Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts.

It is of no consequence that the harm to decedent was inflicted by third parties acting negligently. ■ Defendant invokes the maxim that an actor is entitled to assume that others will not act negligently. (*Porter* v. *California Jockey Club, Inc.* (1955) 134 Cal.App.2d 158, 160 [285 P.2d 60].) This concept is valid, however, only to the extent the intervening conduct was not to be anticipated. (*Premo* v. *Grigg* (1965) 237 Cal.App.2d 192, 195 [46 Cal.Rptr. 683].) If the likelihood that a third person may react in a particular manner is a hazard which makes the actor negligent, such reaction whether innocent or negligent does not prevent the actor from being liable for the harm caused thereby. (*Richardson* v. *Ham* (1955) 44 Cal.2d 772, 777 [285 P.2d 269].) ■ Here, reckless conduct by youthful contestants, stimulated by defendant's broadcast, constituted the hazard to which decedent was exposed.

■ It is true, of course, that virtually every act involves some conceivable danger. Liability is imposed only if the risk of harm resulting from the act is deemed unreasonable—i.e., if the gravity and likelihood of the danger outweigh the utility of the conduct involved. (See Prosser, Law of Torts (4th ed. 1971) pp. 146-149.)

We need not belabor the grave danger inherent in the contest broadcast by defendant. The risk of a high speed automobile chase is the risk of death or serious injury. Obviously, neither the entertainment afforded by the contest nor its commercial rewards can justify the creation of such a grave risk. Defendant could have accomplished its objectives of entertaining its listeners and increasing advertising revenues by adopting a contest format which would have avoided danger to the motoring public.

Defendant's contention that the giveaway contest must be afforded the deference due society's interest in the First Amendment is clearly without merit. The issue here is civil accountability for the foreseeable results of a broadcast which created an undue risk of harm to decedent. ▓ The First Amendment does not sanction the infliction of physical injury merely because achieved by word, rather than act.

We are not persuaded that the imposition of a duty here will lead to unwarranted extensions of liability. Defendant is fearful that entrepreneurs will henceforth be burdened with an avalanche of obligations: an athletic department will owe a duty to an ardent sports fan injured while hastening to purchase one of a limited number of tickets; a department store will be liable for injuries incurred in response to a "while-they-last" sale. This argument, however, suffers from a myopic view of the facts presented here. The giveaway contest was no commonplace invitation to an attraction available on a limited basis. It was a competitive scramble in which the thrill of the chase to be the one and only victor was intensified by the live broadcasts which accompanied the pursuit. In the assertedly analogous situations described by defendant, any haste involved in the purchase of the commodity is an incidental and unavoidable result of the scarcity of the commodity itself. In such situations there is no attempt, as here, to generate a competitive pursuit on public streets, accelerated by repeated importuning by radio to be the very first to arrive at a particular destination. Manifestly the "spectacular" bears little resemblance to daily commercial activities.

Defendant, relying upon the rule stated in section 315 of the Restatement Second of Torts, urges that it owed no duty of care to decedent. The section provides that, absent a special relationship, an actor is under no duty to control the conduct of third parties. As explained hereinafter, this rule has no application if the plaintiff's complaint, as here, is grounded upon an affirmative act of defendant which created an undue risk of harm.

The rule stated in section 315 is merely a refinement of the general principle embodied in section 314[5] that one is not obligated to act as a "good samaritan." (Rest.2d Torts, § 314, com. (a); James, *Scope of Duty in Negligence Cases* (1953) 47 Nw.U.L.Rev. 778, 803.) This doctrine is rooted in the common law distinction between action and inaction, or misfeasance and nonfeasance. ■ Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. As section 315 illustrates, liability for nonfeasance is largely limited to those circumstances in which some special relationship can be established. If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care discussed above.

Here, there can be little doubt that we review an act of misfeasance to which section 315 is inapplicable. Liability is not predicated upon defendant's failure to intervene for the benefit of decedent but rather upon its creation of an unreasonable risk of harm to him. (See *Shafer v. Keeley Ice Cream Co.* (1925) 65 Utah 46 [234 P. 300, 38 A.L.R. 1523].)[6] Defendant's reliance upon cases which involve the failure to prevent harm to another is therefore misplaced, e.g., *Wright* v. *Arcade School Dist., supra,* 230 Cal.App.2d 272 (school district held free of a duty of care to children injured on their way to and from school).

Finally, we address the propriety of an allegedly erroneous and prejudicial instruction. The challenged instruction, though approved by the trial judge after submission by plaintiffs, was inadvertently omitted from the charge to the jury. Although plaintiffs immediately called the oversight to the judge's attention, the absence of a court reporter

[5]Section 314, states: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

[6]In *Shafer* defendant entered a float in a commercial parade and as the float traveled down the street, employees threw candy to the crowd. Children running to collect the candy injured a spectator. The court distinguished cases in which the conduct of the person who immediately caused the accident was not set in motion by any act of the defendant on the ground that the defendant, in throwing the candy, induced the response of the children which resulted in the plaintiff's injuries.

Contrary to defendant's assertion, *Shafer* is not distinguishable because there the defendant had *actual* knowledge children were following the float and scrambling for candy. Such knowledge only obviated the need for a determination that the acts of the children were foreseeable. In the present case, as we have seen, the jury's determination that the accident was foreseeable is supported by the evidence.

prevented verification of the omission until the morning of the jury's third day of deliberations. Thereupon, the judge recalled the jury, explained his inadvertent error, and read the instruction, which stated: "One who undertakes to direct the action of another has a duty to do so with due care."

Defendant contends that the instruction was argumentative in that it focused exclusively on KHJ and no other defendant. We need not examine the merit of this assertion for defendant itself requested and received an instruction to substantially the same effect. That instruction began, "Every person who engages in a business activity which directs or influences the conduct of others and who, while so engaged exercises ordinary care . . . ."[7] ■ It is well settled that a party cannot attack the substance of an instruction if he himself proposed similar instructions. (*Smith* v. *Americania Motor Lodge* (1974) 39 Cal.App.3d 1, 7 [113 Cal.Rptr. 771].) For the same reason, we reject defendant's contentions that there was no support in the record for the challenged instruction and that it was ambiguous.

■ Additionally, defendant claims that independent prejudice arose from the tardy and isolated manner in which the instruction was given. The jury, it is asserted, attached undue importance to the instruction because it was given by itself on the third day of deliberations. We do not agree.

■ The trial court possesses the inherent right on its own motion to recall the jurors for further instructions. (*People* v. *Wester* (1965) 237 Cal.App.2d 232, 238 [46 Cal.Rptr. 699]; *People* v. *Hewitt* (1936) 11 Cal.App.2d 197, 199 [53 P.2d 365].) In *Davis* v. *Erickson* (1960) 53 Cal.2d 860 [3 Cal.Rptr. 567, 350 P.2d 535], we stated if a court recalls the jury for the purpose of reading unintentionally omitted instructions the danger that the instruction will be overemphasized may be avoided if the court admonishes the jury not to attach any particular emphasis to the fact that it is reading certain instructions which had been inadvertently omitted in its first reading or by rereading all the instructions. ■ Here the prefatory remarks of the trial judge minimized any

---

[7]The entire instruction read: "Every person who engages in a business activity which directs or influences the conduct of others and who, while so engaged, exercises ordinary care (in the manner in which said activity is conducted) has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise or actual notice to the contrary, it is not negligence for such person to fail to anticipate an accident which can be occasioned only by a violation of law or duty by another person (or persons)."

tendency of the jury to be unduly impressed by the circumstances under which the instruction was given.

Moreover, defendant failed to request either additional cautionary instructions or a rereading of all related instructions. Under similar circumstances, it was held in *Stoddard* v. *Rheem* (1961) 192 Cal.App.2d 49 [13 Cal.Rptr. 496] that the defendant should not be permitted to stand silently by, giving the appearance of acquiescence in the manner in which an instruction was given and be later heard to complain, too late for curative measures to be taken.

The judgment and the orders appealed from are affirmed. Plaintiffs shall recover their costs on appeal. The parties shall bear their own costs on the cross-appeal.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.