TRIPLEX COMMUNICATIONS, INC.
d/b/a Radio Station KZZB–95
FM, Petitioner,

v.

James R. RILEY, Mary Gray, and Deep
East Texas Self Insurance Fund,
Respondents.

No. 94–0567.

Supreme Court of Texas.

Argued Jan. 5, 1995.

Decided June 8, 1995.

Rehearing Overruled July 21, 1995.

Charles K. Kebodeaux, Donean Surratt, Beaumont, for petitioner.

Phillip Babin, III, Thomas A. Peterson, Joe Michael Dodson, Beaumont, for respondents.

SPECTOR, Justice, delivered the opinion of the Court, in which all Justices join.

In this cause we consider whether a radio station may be held liable under theories of joint enterprise, civil conspiracy, and negligent promotion for personal injuries resulting from a nightclub's violations of Texas' Dram Shop Act, Tex.Alco.Bev.Code § 2.02.

The trial court refused to submit the plaintiffs' requested questions and definitions on joint enterprise, negligent promotion, and civil conspiracy. The court of appeals reversed and remanded, holding that the trial court abused its discretion by failing to submit the plaintiffs' tendered questions and definitions. 874 S.W.2d 333. Because we hold that the radio station may not be held liable for the tortious acts of the nightclub under any of the three theories, we reverse the judgment of the court of appeals and order that the plaintiffs take nothing from the radio station.

For about seven years, KZZB–95 FM (B–95), a Beaumont radio station, and the Cowboy Palace, Inc. (the Palace) collaborated on a weekly event known as "B–95 Ladies Night at the Palace." B–95 advertised that Thursday night was Ladies' Night at the Palace, meaning that women aged twenty-one years or older would be admitted at no charge. The Palace pre-screened the radio advertisements, except for occasional promotional spots that it could later change. Consistent with the law and at the Palace's request, B–95 indicated in its spots that persons aged eighteen to twenty would be admitted into the establishment. The Palace's Thursday night bar drinks were ninety-five cents, a price set to correspond with B–95's 95.1 FM frequency.

B–95 and the Palace worked closely to make "B–95 Ladies' Night" successful. The Palace sought to increase patronage and B–95 sought advertising revenue. Toward this end, B–95 assigned a disc jockey to the Palace for live remote broadcasts during Ladies' Night. The on-site disc jockey was responsible for making announcements over the public address system informing patrons of drink specials and other promotions. The announcements encouraged patrons to go to the bar. There was evidence that B–95's disc jockey witnessed people becoming intoxicated at the Palace and was aware of underage drinking at the club. Over the seven–year relationship, there were a number of other promotional activities, including the appearance of B–95's mascot, the "Super Bee," at the Palace during Ladies' Night.

On the evening of June 30, 1988, Michael Edward Poupart, an underage patron of the Palace, was served ten alcoholic beverages. After leaving the Palace on the evening in question, Poupart was involved in a serious automobile accident caused by his intoxication. The Beaumont police responded, and officers James Riley and Mary Gray were responsible for directing traffic off of the freeway approximately 300 to 400 yards north of the accident.

During that same evening, Joseph Wayne Stephens arrived at the Palace sometime between 8:30 and 9:00 P.M. Vernis T. Dartez, a Palace bartender, served Stephens either sixteen or seventeen mixed drinks. Stephens, a regular at the Palace, exhibited signs that he was highly intoxicated while he was being served alcoholic beverages.

Stephens was on his way home and travelling at a high rate of speed when his car hit another car that had stopped at the scene of Poupart's accident. Stephens' car ricocheted off the other car and struck Riley and Gray. Stephens' blood-alcohol content was later determined to be substantially above the legal limit, and it is undisputed that Stephens caused the accident.

Officers Riley and Gray brought this action against the Palace, Dartez, and B–95/Triplex. The trial court refused to submit Riley's and Gray's requested questions relating to joint enterprise and negligent promotion, and submitted a definition of civil conspiracy to which Riley and Gray objected. The jury found that the Palace and Dartez were liable under Chapter 2 of the Texas Alcoholic Beverage Code, but failed to find that Triplex and B–95 were engaged in a civil conspiracy with the Palace.

The trial court rendered judgment in favor of Riley, Gray, and an intervenor, Deep East Texas Insurance Fund (Riley's and Gray's workers' compensation carrier), in the amount of $1,410,837.43—to be assessed jointly and severally against the Palace and Dartez. The court also awarded $100,000 in

punitive damages against the Palace. Because the jury failed to find the existence of a civil conspiracy, and had no opportunity to consider questions on joint enterprise and negligent promotion, Riley and Gray took nothing from B–95. The judgments against Dartez and the Palace are not before this Court.

The court of appeals reversed the judgment of the trial court, concluding that the trial court erred by failing to submit questions on joint enterprise and negligent promotion, and that the civil conspiracy definition was defective.

## I. Joint Enterprise

Triplex first argues that the court of appeals erred in holding that Riley and Gray were entitled to a jury question on the issue of joint enterprise. 874 S.W.2d at 326–47. We agree.

If an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury. See Exxon Corp. v. Perez, 842 S.W.2d 629, 631 (Tex.1992); Moore v. Lillebo, 722 S.W.2d 683, 686–87 (Tex.1986); TEX.R.CIV.P. 278. Here, while Riley and Gray may have properly pleaded joint enterprise liability, the evidence adduced at trial was legally insufficient to support the submission of their tendered question.

Riley's and Gray's requested question asked whether B–95 and the Palace had: (1) an express agreement; (2) a common purpose; (3) a common pecuniary interest; and (4) an equal right to control the enterprise. See Shoemaker v. Estate of Whistler, 513 S.W.2d 10, 16–17 (Tex.1974). Even if the evidence adduced at trial satisfied the first three prongs of this test, there is no evidence of an equal right to direct and control the enterprise to justify the imposition of joint enterprise liability.[1]

Riley and Gray suggest that we define enterprise broadly, to encompass all of

1. We do not reach Triplex's argument that the Legislature has chosen to impose statutory civil liability on providers of alcoholic beverages, and not on persons who are not in control of the liquor supply. See TEX.ALCO.BEV.CODE § 2.03;

Smith v. Sewell, 858 S.W.2d 350 (Tex.1993). Nor do we reach Triplex's argument that defects in the jury question relating to the Palace's liability under the Dram Shop Act make it improper for liability to be imputed to Triplex.

the business dealings between the Palace and B–95 relating to Ladies' Night. They argue that this expansive definition would reveal that B–95 exercised some control over the relationship, giving rise to some evidence of a joint enterprise. *See Shoemaker*, 513 S.W.2d at 15 (equal right of control means that each member of the joint venture must have an authoritative voice, or "must have some voice and right to be heard"); RESTATEMENT (SECOND) OF TORTS § 491 (1965). Triplex, on the other hand, prefers to characterize its relationship with the Palace as one in which a radio station, through advertising and promotions, conducted ordinary business with a client. Under either characterization, however, whether there was a joint business venture or a simple advertiser-client relationship, there is no evidence that B–95 had an equal right of control that would give rise to joint enterprise liability. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex.1993) (general right of control insufficient to make defendant responsible for actor's criminal conduct in premises liability action).

To establish that B–95 exercised an equal right to control the business relationship, Riley and Gray place great emphasis on the fact that drink prices corresponded with B–95's FM frequency. Yet, it is undisputed that the Palace—not B–95—set drink prices. Drinks were 95 cents on all nights except KYKR night, when they were 93 cents to correspond with that station's FM frequency.

The Palace, which was licensed to sell alcohol, maintained absolute control over the provision of all drinks. The proprietors of the Palace decided who was admitted and ejected from the Palace, controlled how much liquor was served and to whom it was served, and were best positioned to monitor the amount of liquor that patrons consumed. There was no evidence that B–95 had a contractual right of control, or exercised any right of control, over who was served, admitted, or ejected. Similarly, the Palace had no right to control the operation of the radio station.

At most, the evidence at trial indicated that B–95 could make suggestions that the Palace could adopt or reject. There was no evidence that B–95 had a voice in, or an equal right to control, the provision of the alcohol. The evidence of B–95's general participation in the event is legally insufficient to support the submission of a question regarding joint enterprise. *See* TEX.R.CIV.P. 278.

## II. Civil Conspiracy

■ Riley and Gray contend, and the court of appeals agreed, that the definition of civil conspiracy submitted to the jury was erroneous because it required the jury to find that the parties "intended to accomplish an unlawful or negligent purpose or to accomplish a lawful purpose by unlawful or negligent means." 874 S.W.2d at 348. The gravamen of their argument is that the tortfeasors needed only to intend to engage in the conduct that resulted in the injury. We disagree; civil conspiracy requires specific intent. For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement.

Riley and Gray requested the following question and definition regarding civil conspiracy:

> At the time in question, were The Cowboy Palace, Inc. and Radio Station KZZB–95 FM engaged in a civil conspiracy in a course of conduct which resulted in the injuries to the Plaintiffs?

> You are instructed that a "CIVIL CONSPIRACY" exists when two or more parties consciously or knowingly agree among themselves, or otherwise combine together to engage in a lawful purpose or known course of conduct, and perform some acts to implement the course of conduct by some unlawful means.

> The term "unlawful means" may include negligence or the violation of a statute or law. It is not necessary that all co-conspirators engage in unlawful means.

■ The requested question and definition are inconsistent with this Court's prior decisions relating to civil conspiracy. *See, e.g., Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). This Court has repeatedly defined civil conspiracy as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *See id.; see*

*also Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 925 (Tex.1979). The elements of the cause of action must be taken in the context of this basic definition stating that the object to be accomplished, or means by which accomplished, is unlawful. *Massey,* 652 S.W.2d at 934. The "gist of a civil conspiracy" is the injury that is intended to be caused. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 856 (Tex.1968). One "cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of." *Id.* at 857.[2]

■ Thus, because Riley's and Gray's tendered question and definition would have improperly eliminated the intentional or knowing aspects of civil conspiracy, we hold that the trial court properly refused to submit them to the jury. *See* TEX.R.CIV.P. 278.

### III. Negligent Promotion

Finally, Triplex argues that the court of appeals erred in recognizing a cause of action for negligent promotion. Under the circumstances of this case, we agree.

■ It is axiomatic that a legal duty must exist before a defendant may be held liable in negligence. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). As a general rule, there is no legal duty in Texas to control the actions of third persons absent a special relationship, such as master/servant or parent/child. *See Phillips,* 801 S.W.2d at 525; *Verdeur v. King*

*Hospitality Corp.,* 872 S.W.2d 300, 301 (Tex. App.—Fort Worth 1994, writ denied); RE-STATEMENT (SECOND) OF TORTS § 315 (1965).

■ To justify a departure from this rule, Riley and Gray rely principally on *Weirum v. RKO General Inc.,* 15 Cal.3d 40, 123 Cal. Rptr. 468, 539 P.2d 36 (1975). In *Weirum,* a broadcaster encouraged motorists to pursue the radio station's promotional vehicle to different locations. The broadcasts indicated that the first persons to arrive at those locations would be rewarded with prizes. The broadcasts in *Weirum* were clearly calculated to incite and encourage imminent reckless behavior that exposed the plaintiffs in that case to an unreasonable risk of injury.

In the present case, there is no evidence that the promotions at issue were calculated to incite reckless or unlawful behavior. B–95's advertisements and promotions never approached the level of culpability at issue in *Weirum,* giving this Court no reason to depart from well-settled duty rules.

Accordingly, we hold that the trial court correctly refused to submit a question on the tort of negligent promotion.

\*   \*   \*   \*   \*   \*

Because plaintiffs' requested question on joint enterprise was not supported by some evidence, we conclude as a matter of law that the trial court correctly refused to submit the issue of joint enterprise liability. Further, the trial court properly refused plaintiffs' tendered definition of civil conspiracy be-

---

**2.** The trial court submitted the following question and definition on civil conspiracy to the jury:

At the time in question, were The Cowboy Palace, Inc. and Radio Station KZZB–95 FM engaged in a civil conspiracy which resulted in the injuries to the plaintiffs?
A "civil conspiracy" is a combination of two or more persons who agree *between themselves* to accomplish an unlawful *or negligent* purpose or to accomplish a lawful purpose by unlawful *or negligent* means. To establish a civil conspiracy, there must be a meeting of the minds on the object or course of conduct, one or more overt acts in furtherance of the conspiracy, and a preconceived plan and unity of design and purpose to engage in the course of conduct that results in an injury to another. (Emphasis added.)

This definition is also erroneous because it permitted the jury to find that the parties conspired to be negligent. Given the requirement of specific intent, parties cannot engage in a civil conspiracy to be negligent. *See generally Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985) ("The fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury."). The only precedent to the contrary comes from the Beaumont Court of Appeals. *See Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 796 (Tex.App.—Beaumont 1988, writ denied). We expressly disapprove of *Rogers* to the extent that it holds that there can be a civil conspiracy to be negligent. However, because the jury in the present case failed to find the existence of a civil conspiracy under the more liberal standard presented in the erroneous definition, any error in the definition is not dispositive in this case.

cause the proposed definition was not substantially correct. Finally, the trial court correctly refused to submit a question on negligent promotion because, under the facts of this case, Triplex owed no duty to the injured officers. Consequently, we reverse the judgment of the court of appeals and order that Riley and Gray take nothing from Triplex.