O’Neill, J.,
dissenting.
{¶ 19} Respectfully, I must dissent.
{¶ 20} Rather than further limiting recourse in tort for the citizens of the state of Ohio, I would proceed to answer the questions certified to us by the United States District Court for the Southern District of Ohio, Western Division. The majority adopts a narrow reading of the case law on negligent misidentification and then bolsters the correctness of its position by appealing selectively to public policy in favor of reporting crimes, all while ignoring the questions before us. I do not agree that this ease is simple, and I will address the case law, public policy, and procedure in turn.
{¶ 21} In all cases alleging negligence, the fundamental guiding principle is that “[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehen *258 sion.” Palsgraf v. Long Island RR. Co., 248 N.Y. 339, 344, 162 N.E. 99 (1928). So the entry-level question whether a tort such as negligent misidentification exists is answered by considering whether there are any reasonably foreseeable risks inherent in falsely reporting a crime. The tort of negligence really is that simple, and it is that broad.
{¶ 22} The majority’s understanding of the tort of negligence is too rigid. The fact that we recognized the intentional tort of false arrest in Mouse v. Cent. Sav. & Trust Co., 120 Ohio St. 599, 167 N.E. 868 (1929), does not foreclose pleading a cause in negligence alleging the wrongful identification of an alleged wrongdoer by a person who should have known there was no crime. The same is true, for example, when someone accidentally strikes another with a fist, a car, or a bullet: the existence of the tort of battery does not foreclose pleading a cause in negligence if the evidence might show that the conduct was unintended rather than intended. And at the pleadings phase in a federal district court, where the underlying matter is pending, it may be wise to plead both the intentional and the unintentional tort because a court could decide at that phase that recovery on one of the causes of action is unavailable given the facts that were pled. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
{¶ 23} There is a glaring conclusion to draw from Mouse. The plaintiff had pled his claim in negligence, the defendant answered alleging contributory negligence, and this court analyzed the claim as one sounding in negligence while ruling on the issue whether an intervening act cuts off proximate causation. Mouse at 600. In short, we reviewed Mouse applying traditional negligence law dating back some 200 years. Id. Ohio courts have followed the guidance of Mouse and have drawn an obvious conclusion from it: this court recognized a duty to not make allegations to law enforcement if one should reasonably know that those allegations are untrue. E.g., Walls v. Columbus, 10 Ohio App.3d 180, 461 N.E.2d 13 (10th Dist.1983).
{¶ 24} Although couching its decision in terms of recognizing or declining to recognize a cause of action, the majority opinion is mistaken as to the import of its decision. There is already a cause of action for negligence. With the sweep of a pen, the majority effectively negates what we previously recognized to be an actionable legal duty not to falsely accuse the innocent.
{¶ 25} The majority’s discussion of the public policy supporting its decision is one dimensional. I can readily agree that public policy favors the reporting of crime. But public policy does not favor the inaccurate reporting of crime or the vindication of a personal quarrel through embellished or inaccurate reports of crime. Today, Ohio loses an important bulwark against these risks to the public. If we are going to talk public policy, let’s talk about it from all realistic *259 perspectives. The bottom line is that in today’s electronically enhanced climate of heightened police response, there are some things you can say on a 9-1-1 call that will bring the cavalry out in force. The news regularly reports on those who are injured or killed during the police response to inaccurate or false reports of crime.[1] If our police are going to be able to respond appropriately to threats in the modern era, it will be because they can trust information received. The appropriate balance of the range of public needs in this area is to enforce a duty to accurately report crime through the civil justice system. Let the word go out across the land that if you wrongfully accuse your neighbor of a crime, and the neighbor is summarily placed in jail based upon your negligent act, your day in court will arrive.
{¶ 26} Finally, the majority modifies tort law in a case that lacks an adequate foundation for such a sweeping holding. If this court wants to change the law, it should do so in a case that arises in the state’s court system and comes before us on direct appeal. Although the existence of a duty is a question of law, the circumstances and context of a case are vital to determining whether a duty exists. Mussivand v. David, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).
*260 Green & Green, Jane M. Lynch, and Jared A. Wagner, for petitioner Dylan Parfitt.
Benjamin, Yocum & Heather, L.L.C., Timothy P. Heather, and R. David Weber, for petitioner Michael R. Groff.
Spangenberg, Shibley & Liber, L.L.P., Michael A. Hill, and Dennis R. Lans-downe, for respondents.
The existence of a duty in a negligence action is a question of law for the court to determine. See Railroad Co. v. Harvey (1907), 77 Ohio St. 235, 240, 83 N.E. 66, 68. There is no formula for ascertaining whether a duty exists. Duty “ * * * is the court’s ‘expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.’ (Prosser, Law of Torts (4th ed.1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, Palsgraf Revisited (1953), 52 Mich.L.Rev. 1, 15). * * * ” Weirum v. RKO General, Inc. (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468, 471, 539 P.2d 36, 39.
(Ellipses sic.) Id.
{¶ 27} We should answer the questions submitted by the federal court. I would hold that the two-year statute of limitations for actions for bodily injury, R.C. 2305.10(A), applies because the one-year statute of limitations in R.C. 2305.11(A) does not, by its plain terms, govern suits in negligence. I would further hold that absolute and qualified privileges are not applicable, because there is no public interest sufficiently important to justify placing the foreseeable risks of inaccurate reporting of crime upon the misidentified person. Keeton, Dobbs, Keeton & Owen, Prosser and Keeton on the Law of Torts, Section 114, 815 (5th Ed.1984) (“The defense of privilege * * * rests upon the * * * idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiffs reputation”). And I believe that juries are better able to determine the reasonableness of a person’s inaccuracies in reporting a crime than are courts.
{¶ 28} Respectfully, I dissent.
Pfeifer, J., concurs in the foregoing opinion.

. In August 2014, a 9-1-1 caller reported to police in Beavercreek, Ohio, that a man was attempting to load a rifle and pointing it at children in a Walmart store. Wing, 911 Caller Will Not Be Charged for Giving Cops Bad Info Before Fatal Police Shooting, The Huffington Post (Apr. 7, 2016; updated Apr. 18, 2016), available at http://www.huffingtonpost.com/entry/ronald-ritchie-john-crawford_us_ 57065a21e4b0b90ac2714e86 (accessed October 19, 2016). The man, John Crawford III, was holding a toy pellet gun that he had taken off a shelf in the store. Crawford was shot and killed by police.
In November 2014, a 9-1-1 caller reported to police in Cleveland, Ohio, that a person who was “probably a juvenile” was pointing a gun around outside a recreation center and that the gun was “probably fake.” MacDonald, Errors by police radio ivorker ‘significant’ factor in fatal shooting of Tamir Rice, prosecutor says, Cleveland.com (Dee. 28, 2105), available at http://www.cleveland.com/ metro/index.ssf/2015/12/errors_by_police_radio_workers.html (accessed October 19, 2016). The dispatcher told the responding officers that the person was scaring people with a gun but did not report that the person was probably a child or that the gun was probably fake. Responding officers shot and killed Tamir Rice immediately upon arriving at the scene.
In July 2016, a 9-1-1 caller reported to police in Avon, Ohio, that a man in traditional Arabian garb had pledged allegiance to ISIS during a cell-phone conversation. Grinberg & Johnson, For Muslim visitor, ugly encounter leads to apology, CNN (updated July 5, 2016), available at http: //www.cnn.eom/2016/07/03/us/ohio-false-isis-report/ (accessed October 19, 2016). Police responded with guns drawn and handcuffed a citizen of the United Arab Emirates before determining that the man had not made statements related to ISIS. The man, who had been seeking medical treatment in the United States, collapsed during the encounter and was hospitalized for a light stroke.
There are also examples of property damage due to false reports of crime. See, e.g., Victim of fake 911 call sues Ohio police over damage to home, The Washington Post (September 7, 2016), available at https://www.washingtonpost.com/national/victim-of-fake-911-call-sues-ohio-police-over-damage-to-home/2016/09/07/458c5aee-74fd-lle6-9781-49e591781754_story.html (accessed October 19, 2016).