NO. 07-05-0431-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 6, 2006



______________________________




MANUEL RUELAS-SIGALA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 84TH DISTRICT COURT OF OCHILTREE COUNTY;



NO. 3802; HONORABLE WILLIAM D. SMITH, JUDGE



_______________________________



Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

 Following a plea of not guilty, appellant Manuel Ruelas-Sigala was convicted by a
jury of indecency with a child and sentenced to ten years confinement. By a single issue,
appellant contends he was denied effective assistance of trial counsel. We affirm.

 Appellant was indicted for exposing his genitals to two girls, ages eleven and nine,
at the Perryton swimming pool. Both girls testified at trial that between 3:00 and 3:30 p.m.
on June 13, 2003, they saw appellant looking at them while they were in the water with his
penis outside of his shorts. Following the incident, both girls were able to identify appellant
out of a photo lineup. The girls' testimony was corroborated by a lifeguard who testified she
observed appellant in the pool that day and observed him masturbating in the pool while
looking at young girls two days later on June 15. Following the second incident, appellant
was arrested and the cases were consolidated for a single trial.

 Appellant, who testified through an interpreter, admitted he was at the pool on June
15 but claimed he was not at the pool on June 13 because he did not return from his job
in Tribune, Kansas until 3:30 p.m. When challenged on cross-examination, appellant
claimed his brother had papers proving he did not return to Perryton until 3:30. However,
appellant's brother was not available to testify at trial. Appellant's supervisor, who was with
appellant that day, testified the crew returned to Perryton at 3:30 p.m. But, when
confronted with his prior statement, he admitted it was probably closer to 2:00 p.m. 
Another member of appellant's crew testified that due to inclement weather, the crew
returned to Perryton at approximately 2:00 p.m. 

 Ineffectiveness of counsel is reviewed under the standard in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a
defendant must establish (1) counsel's performance was deficient (i.e., fell below an
objective standard of reasonableness), and (2) there is a reasonable probability that but for
counsel's deficient performance, the result of the proceeding would have been different, a
reasonable probability being a probability sufficient to undermine confidence in the
outcome. Rylander v. State, 101 S.W.3d 107, 110 (Tex.Cr.App. 2003); Hernandez v. State,
726 S.W.2d 53, 55 (Tex.Cr.App. 1986). In other words, appellant must demonstrate by a
preponderance of the evidence that the deficient performance prejudiced his defense. 
Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App. 2002); Thompson v. State, 9 S.W.3d
808, 813 (Tex.Cr.App. 1999). Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness claim. Thompson, 9 S.W.3d
at 814 (citing Strickland, 466 U.S. at 700). 

 The adequacy of defense counsel's assistance is based upon the totality of the
representation rather than by isolated acts or omissions of trial counsel. Id. Although the
constitutional right to counsel ensures the right to reasonably effective counsel, it does not
guarantee errorless counsel whose competency or accuracy of representation is to be
judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); Ex parte
Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Appellate review of trial counsel's
representation is highly deferential and presumes that counsel's conduct fell within the wide
range of reasonable and professional representation. See e.g., Andrews v. State, 159
S.W.3d 98, 101 (Tex.Cr.App. 2005); Bone v. State, 77 S.W.3d 828, 833 (Tex.Cr. App.
2002). To defeat the presumption of reasonable professional assistance, any allegation
of ineffectiveness must be firmly founded in the record. Thompson, 9 S.W.3d at 813-14.

 Appellant maintains trial counsel's representation was deficient in four specific areas. 
First, he alleges the language barrier between him and counsel rendered the amount of
time before trial insufficient for counsel to adequately prepare. We disagree. The record
indicates trial counsel was appointed on February 26, 2004, and trial began on March 29,
2004. Appellant fails to direct us to any evidence in the record, and we find no such
evidence, suggesting he had difficulty communicating with counsel prior to trial, or that after
one month, counsel was inadequately prepared for trial. Moreover, appellant fails to
explain how additional time to prepare for trial would have assisted his defense. 
Accordingly, appellant has failed to prove error in this regard. See id.

 Next, appellant claims trial counsel made no effort to locate his brother who could
have provided documentation as to his location at the time of the offense. On cross-examination, appellant testified his brother had papers which would prove he returned to
Perryton at 3:30 p.m. instead of 2:00 p.m. When the State questioned him regarding his
brother's whereabouts, appellant replied, "Well he is working and I can't be bothering him
every time I have hearings." Appellant's response tends to suggest either he or counsel
made a conscious decision regarding whether or not to call his brother as a witness. In
addition, counsel fails to direct us to any evidence in the record which would attribute the
fact his brother was not called to testify to counsel's failure to properly investigate. Absent
further evidence regarding counsel's trial strategy, we cannot say counsel's representation
here was deficient.

 Appellant next contends counsel failed to raise the issue of his incompetency to
stand trial. Appellant alleges his "language barrier and cultural differences" prevented him
from having the ability to consult with trial counsel with any reasonable degree of
understanding. He also claims he was unable to fully comprehend the questions presented
to him on direct and cross-examination. We disagree.

 A defendant is presumed to be competent to stand trial unless proven incompetent
by a preponderance of the evidence. Tex. Code. Crim. Proc. Ann art. 46B.003(b) (Vernon
Supp. 2005). A defendant is incompetent to stand trial if he lacks "sufficient present ability
to consult with [his] lawyer with a reasonable degree of rational understanding; or . . . a
rational as well as factual understanding of the proceedings against [him]." Id. at (a). 
Either party or the trial court may suggest by motion that the defendant may be
incompetent to stand trial. Id. at 46B.004(a). If bona fide evidence from any source
suggesting a defendant's incompetency is brought to the trial court's attention, the court
must determine by informal inquiry whether the evidence would be sufficient to support a
finding that the defendant may be incompetent to stand trial. See id. at 46B.004(b)-(c). 
Generally, bona fide evidence exists only if the evidence indicates recent severe mental
illness, moderate mental retardation, or truly bizarre acts by the defendant. McDaniel v.
State, 98 S.W.3d 704, 710 (Tex.Cr.App. 2003) (citing Alcott v. State, 51 S.W.3d 596, 602
(Tex.Cr.App. 2001)).

 In the present case, none of the evidence cited by appellant would suggest recent
severe mental illness, moderate mental retardation, or truly bizarre acts on his behalf. 
Furthermore, any language barriers or cultural differences were surmounted when the court
provided appellant with a qualified sworn interpreter, and appellant did not complain about
the adequacy of the translation. In fact, the record reflects the trial court expressed some
concern that appellant was purposely not understanding the questions asked. Because
there was insufficient evidence to warrant an inquiry into appellant's competency, we find
counsel was not ineffective when he failed to raise the issue at trial. See e.g., LaHood v.
State, 171 S.W.3d 613, 623 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd); Brown v.
State, 129 S.W.3d 762, 767 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

 Finally, appellant contends counsel failed to object to the State's improper jury
argument. During closing arguments, counsel for the State made the following comments
regarding appellant's bond premium:

 I'm sorry he had to pay that. But I really don't care. You know, I don't think
in Mexico that they think the punishment is paying the bond premium. I don't
think in Mexico they think the punishment ought to be paying the lawyer. I
don't buy this nonsense that you just buy your way out in Mexico.

 I'm sorry, I don't believe that's the way it is in Mexico, and if it was, so 
what? This is the United States of America. He is a guest in our country .
. . . And as a guest in our country, you live by our rules or you get out. . . .
And it's time for you to say to him, "No, you haven't been punished enough,
friend, but we are going to return a verdict of guilty and we will see what the
judge of this court thinks is appropriate punishment for you . . . ."

 

Appellant claims this argument by counsel was an improper attempt to inflame the jury. We
disagree.

 Proper jury argument may include (1) a summation of the evidence presented at
trial; (2) reasonable deductions drawn from evidence presented at trial; (3) a response to
opposing counsel's argument; or (4) a plea for law enforcement. Lagrone v. State, 942
S.W.2d 602, 619 (Tex.Cr.App. 1997). To constitute reversible error, the argument must be
violative of a statute, inject new facts harmful to the accused into the trial proceedings, or
be manifestly improper, harmful, and prejudicial to the rights of the accused. Wesbrook v.
State, 29 S.W.3d 103, 115 (Tex.Cr.App. 2000).

 Here, appellant testified he had already been punished because he had to pay a
lawyer and his bond premium prior to trial. The State's argument here summarizes
testimony and consists of a plea for law enforcement with reference to appellant's status
as a resident alien. Reviewing the remarks in context, we do not find them to be manifestly
improper, harmful, or prejudicial to the rights of appellant. Therefore, counsel did not err
by failing to object. 

 Absent further evidence regarding counsel's trial strategy and provided the
presumption that trial counsel's conduct falls within the wide range of reasonable and
professional representation, no reversible error is demonstrated. See Bone v. State, 77
S.W.3d 828, 833 (Tex.Cr.App. 2002); Mallett v. State, 65 S.W.3d 59, 63 (Tex.Cr.App.
2001). Appellant's issue is overruled. 

 Accordingly, the trial court's judgment is affirmed. 

 

 Don H. Reavis 

 Justice 


Do not publish. 



it). Indeed, a trial court should not make findings on every disputed fact, but only those
having some legal significance to an ultimate issue in the case. Stucky Diamonds v. Harris
County Appraisal, 93 S.W.3d 212, 213 (Tex.App.--Houston [14th Dist.] 2002, no pet.). 

 In addition, the findings of fact and conclusions of law contained the following
instruction: 

 [i]f any of the items labeled Conclusions of Law are Findings of Fact, they
should be so considered.


By items 10 and 11, the trial court concluded that Watts and Grimes engaged in false,
misleading, or deceptive acts or practices that were a producing cause of damages to
Lawson. Then, by conclusion 16, it found that Watts and Grimes engaged in a joint
enterprise. (3) Accordingly, following T-Anchor and Stucky, we conclude the items identified
as conclusions 10, 11, and 16 constitute unchallenged findings of fact for purposes of our
review.

 In Shoemaker v. Estate of Whistler, 513 S.W.2d 10, 14 (Tex. 1974), the Court
adopted the formulation of joint enterprise. Upon a finding of joint enterprise, each party
thereto is the agent of the other and holds each liable for a tortious act of the other. Id. 
See also Texas Department of Transportation v. Able, 35 S.W.3d 608, 613 (Tex. 2000). 
As stated in section 491 of the Restatement (Second) of Torts, vicarious liability under joint
enterprise for the acts of others is consistent with the fundamental purposes of our tort
system to deter wrongful conduct, shift losses to responsible parties, and fairly compensate
deserving victims. See Roberts v. Williamson, 111 S.W.3d 113, 118 (Tex. 2003).

 In addition to the events and evidence summarized above, documentary evidence
included a promotional leaflet provided to Lawson by Senior Benefit Plans of Lubbock
describing the investment opportunity as providing a great return, cash flow, liquidity,
safety, guaranteed, no market risk, no interest fluctuation, and competitive income. The
leaflet concluded:

 WE have looked closely at the alternatives that are available to our clients in
this period of low interest earnings and volatile market place. Fortunately, our
diligence has paid off. We now have such an opportunity! 


 Similarly, a copy from the web site page named Watts, Grimes, and three others as
consultants affiliated with Senior Benefit Plans. The use of plural pronouns is some
evidence of joint enterprise. Further, the events within 90 days following the investment by
Lawson demonstrate the unreliability of the leaflet and promotional material. Because the
findings of joint venture are supported by some evidence and being unchallenged, the
findings are binding on the appellate court. See Brundrett, 970 S.W.2d at 777. Watts's
fourth point of error is overruled. 

 By his ninth point of error, Watts contends the trial court erred in calculating the rate
of postjudgment interest on the judgment awarded to Lawson. The trial court awarded
postjudgment interest at a rate of ten percent per annum beginning September 8, 2003, the
date the judgment was rendered. Watts maintains the appropriate interest rate under
section 304.003(c)(2) of the Texas Finance Code at the time of the judgment was five
percent. We agree. The postjudgment interest rate is determined each month and begins
accruing on the date the judgment is rendered. Tex. Fin. Code. Ann. §§ 304.003(b),
304.005(a) (Vernon Supp. 2004-05). The applicable postjudgment interest rate for
September 2003 was five percent (5%). 28 Tex. Reg. 7473 (2003) (filed Aug. 19, 2003)
(Tex. Consumer Credit Comm'r). Accordingly, Lawson's ninth point of error is sustained.

 Because our disposition of Watts's fourth point of error will require that the judgment
be affirmed, our consideration of his remaining issues is pretermitted. Having sustained
Watts's ninth point, we modify the judgment to bear five per cent interest, and as modified,
the trial court's judgment is affirmed.


 Don H. Reavis

 Justice



Campbell, J., concurring.

NO. 07-03-0485-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MAY 25, 2005



______________________________



DENNIS WATTS, INDIVIDUALLY AND D/B/A SENIOR BENEFIT PLANS


AND D/B/A PROFESSIONAL FINANCIAL SERVICES OF LUBBOCK;


AND NATHAN GRIMES, INDIVIDUALLY AND D/B/A


PROFESSIONAL FINANCIAL SERVICES OF LUBBOCK, APPELLANTS



V.



QUEEN ANNIE LAWSON, APPELLEE


_________________________________



FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY;



NO. 9424; HONORABLE JOHN R. HOLLUMS, JUDGE


_______________________________




Before REAVIS and CAMPBELL, JJ. and BOYD, S.J. (4)

CONCURRING OPINION


 I concur in the Court's judgment, though I cannot join in its opinion finding that the
judgment of the trial court can be sustained on the theory that Watts and Grimes were
engaged in a joint enterprise. Like the relationships among the participants in St. Joseph
Hosp. v. Wolff, 94 S.W.3d 513 (Tex. 2002), the evidence here shows that Watts and Grimes
had different agreements and understandings, encompassing their ongoing insurance
business as well as their business of marketing telephone investments. There may be more
than one way in which the "enterprise" involved here could be defined. See id. at 529. 
Regardless how it is defined, though, I believe that the element of a "community of
pecuniary interest" is missing. See id. at 531-34.

 The trial court's judgment can be sustained, though, on a civil conspiracy theory.
Watts argues on appeal that the trial court's findings of fact contain none of the elements
required to establish a civil conspiracy, and all the elements cannot be presumed, under
Rule of Civil Procedure 299. The elements of a civil conspiracy are (1) a combination of two
or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object
or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate
result. Operation Rescue-National v. Planned Parenthood of Houston and Southeast Tex.,
Inc., 975 S.W.2d 546, 553 (Tex. 1998). 

 By finding of fact 8, the court found that Watts and Grimes "acted together and
conspired together to engage in the sale of pay telephone leases and shared the
commissions on consummation of any sales." (5) That finding includes at least the elements
of a combination and an object to be accomplished. Too, the court's conclusion of law 17
states, "On the occasion in question, Dennis Watts and Nathan Grimes were part of a
conspiracy that damaged Queen Annie Lawson." That conclusion, which perhaps could as
well be denominated a finding of fact, tracks the Pattern Jury Charge question on civil
conspiracy. (6) Rule 299 does not render the judgment insupportable on a civil conspiracy
theory. 

 The object of a civil conspiracy may be a lawful act that is to be accomplished by
unlawful means. Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 719 (Tex. 1995). 
For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct
at the inception of the combination or agreement. Id. See Schlumberger Well-Surveying
Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 856-57 (Tex. 1968). I agree with the
Court's holding that the trial court's conclusion that Watts and Grimes violated the
Deceptive Trade Practices Act is supported by legally and factually sufficient evidence. The
evidence further shows that the means Grimes employed in marketing the telephones to
Mrs. Lawson were the means that he and Watts agreed they would employ in their
marketing efforts. It is undisputed that Grimes told Lawson the telephone investment would
return 14.1% per annum. That statement appears in the promotional leaflet referred to in
the Court's opinion, which carried the name of Watts's company Senior Benefit Plans of
Lubbock, as well as in other literature provided by Phoenix Telecom and used by Watts and
Grimes. The trial court's findings support a judgment holding Watts vicariously liable for
Grimes's actions with respect to Lawson, based on a civil conspiracy, and the evidence is
legally and factually sufficient to sustain those findings. 


 James T. Campbell

 Justice







1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. Nathan Grimes did not file a notice of appeal, individually or d/b/a Professional
Financial Services of Lubbock and seeks no relief herein.
3. See Comm. on Pattern Jury Charges, State Bar of Texas, Texas Pattern Jury
Charges--General Negligence and Intentional Personal Torts, PJC 7.11 (2002)
recommending the submission of only one question for joint enterprise with accompanying
definitions.
4. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
5. As the Court's opinion notes, Watts received a commission on sales of the
telephones made by Grimes.
6. Comm. on Pattern Jury Charges, State Bar of Texas, Texas Pattern Jury
Charges-Business, Consumer, Insurance & Employment, PJC 109.1 (2003). See
Gutierrez v. Gutierrez, 791 S.W.2d 659, 667 (Tex.App.-San Antonio 1990, no writ) (noting
analogy between findings of fact and jury questions, and that it "would be strange indeed
to require judges to make findings in minute detail while requiring jury questions to be
framed broadly").