**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00023-CV**
_____

**CHARLES VON SCHMIDT, Appellant**

**V.**

**JOHN WELLS III, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. CIV32745**

**MEMORANDUM OPINION**

John Wells III sued Charles Von Schmidt for violations of the Texas Elections Code resulting from newspaper advertisements and mailers Von Schmidt had published and mailed to the public during a 2018 runoff election for a Polk County District Court Judge position in which Wells was the losing candidate. Following jury findings in favor of Wells, the trial court entered judgment based on those findings and awarded Wells damages and costs. In one issue, Von Schmidt

1

challenges the legal and factual sufficiency of the evidence to support the jury's verdict asking whether a direct campaign expenditure can constitute a campaign contribution in violation of the Texas Elections Code if the expenditure is made without the prior express consent or approval of the supported candidate. We will reverse and render.

## I. Background

In 2018, Wells and Travis Kitchens were the Republican candidates in a runoff election for a Polk County District Judge position. During the election, Von Schmidt, an individual voter, emailed the same questionnaire to both candidates seeking information regarding their qualifications, experience, and stances on certain issues. The email advised that the information would be used to inform voters but would not take a position advocating for one or the other. Kitchens answered the questions Von Schmidt submitted via return email, but Wells did not respond to the questionnaire.

After seeing Kitchens's qualifications as provided in the email responses, Von Schmidt decided to support Kitchens but did not tell either candidate this. Instead, Von Schmidt took out two newspaper advertisements in local papers and sent out mailers conducting a side-by-side comparison of the candidates, which encouraged voters to support Kitchens. At the bottom of the advertisements and mailers, there was printed this statement, "Political ad paid for by Charles Von Schmidt and not

coordinated with any campaign[.]" Wells lost the election and sued Von Schmidt under Texas Elections Code section 253.131 for alleged violations seeking damages, attorney's fees, and costs.[1] He specifically alleged that Von Schmidt exceeded the allowable contribution limit of $1,000 to a judicial campaign in a voting district of less than 250,000 inhabitants. Wells did not allege in either petition that Von Schmidt's failure to timely report the expenditure constituted a violation of the elections code nor did the suit seek damages under section 254 of the Texas Elections Code. Von Schmidt answered and counterclaimed for his own attorney's fees.

In a pretrial conference, both sides agreed that the primary issue for the jury to decide was whether there was consent or approval by the candidate being supported by the expenditure.

## II. Trial Evidence

### A. Exhibits

At trial, the evidence admitted included copies of the newspaper advertisements, mailers, emails between Von Schmidt and Kitchens, Von Schmidt's Direct Campaign Expenditures Report, and a credit card statement. The credit card statement and report showed an expenditure for the advertisements and mailers of

---

[1] Von Schmidt moved to strike Wells's Amended Petition as it was filed late per the docket control order, and Wells did not seek the trial court's permission prior to filing. The trial court denied the motion to strike.

$3,279.32. The report also noted that the expenditure was made in opposition to Wells.

## B. Testimony of Von Schmidt

Von Schmidt testified that he sent emails containing the same questions to Wells and Kitchens. Wells did not respond, but Kitchens did. According to Von Schmidt, when he started his email information-gathering campaign, he did not intend to support any candidate, instead he was "completely neutral."

When asked whether Kitchens spoke up to oppose the emails, Von Schmidt explained he never told Kitchens in advance he planned to use the information obtained to create a newspaper ad or mailer. Von Schmidt told the jury, "Mr. Kitchens never sent me anything objecting. He had no idea what I was going to do or if I was going to do anything. So, no, sir, he did not object." He testified that the emails did not mention the newspaper ad or mailers. Based on Kitchens's responses and his own research into the qualifications of Wells, Von Schmidt prepared the mailer and sent it out to voters without Kitchens's prior consent or approval. He explained that the "not coordinated with any campaign" phrase he included meant "[n]obody had any influence on what I put on here. Nobody told me this was okay. This was my own research. And I did what I wanted to do as a citizen."

Von Schmidt further testified that through the research process, he learned information that convinced him Kitchens was more qualified, and he began

supporting Kitchens even though that was not his original intent. His expenditure for the newspaper ad and mailers included amounts of $1,093.60 for the Polk County Enterprise ad and $2,185.72 to Willy Walt for the mailers.

Von Schmidt filed a direct campaign expenditure report with the State and included the amounts totaling $3,279.32 for the newspaper ads and mailers. The timeliness of the filing of the report was not raised as an issue in the pleadings nor was it tried by consent by the parties. We do not address it in this opinion.

## C. Testimony of Wells

Wells testified that in 2018, he participated in a runoff with Kitchens for the 258th District Court. Wells explained that Von Schmidt also sent him the questionnaire, but he "ignored it[]" because "it didn't pass the smell test." Wells also told the jury he did not object to the questionnaire, "[h]e didn't respond at all." He testified that in his opinion, when Kitchens responded to Von Schmidt's questionnaire, Kitchens gave his approval, "and e-mails show it." Wells said that in the emails Kitchens "didn't oppose it or disapprove of anything[,]" and the "e-mails show full cooperation." However, Wells acknowledged the email said, "results of this poll will be published without any recommendation as it is intended solely as a voter education tool, not an endorsement." When asked whether he had reason to dispute that Von Schmidt intended to prepare the ads without making a recommendation but changed his mind upon seeing the vast differences in their

5

qualifications, Wells responded, "[o]nly my suspicions[]" and he agreed that was not evidence. Further, when asked whether he had any evidence Von Schmidt sought Kitchens's approval or consent to spend the amount on the newspaper ads and mailers, Wells answered, "I didn't see anything explicitly, no." Wells then told the jury the emails showed Kitchens "was freely cooperating[]" with the publication of the materials. Wells also testified that he researched case law on direct campaign expenditures which said that mailers and advertising done without the consent or approval of the candidate was considered a "contribution," in contrast to a "campaign contribution," which did require the approval and consent of the expenditure, "which [Kitchens] did." However, Wells did not offer any authority to support his opinion.

Wells stated he saw the newspaper advertisements and the mailers, which said, "Vote for Travis Kitchens[,]" in full support of Kitchens and in opposition to Wells. Wells also testified that after he saw them, he looked at the Elections Code and determined that when an individual supports one candidate and opposes another, that is a contribution or direct campaign contribution to the supported candidate. Wells "immediately recognized [the expenditures] as being in excess of the contribution limit." He indicated this was a violation, even though it was only Von Schmidt's personal endorsement. Wells agreed that Von Schmidt spent $3,279.32 on the political advertisement.

6

**D. Testimony of Kitchens**

Kitchens, the candidate who opposed Wells, also testified. Kitchens testified that in 2018, he received an email from Von Schmidt during the election requesting information, and Von Schmidt sent the same email to Wells. He only communicated with Von Schmidt via email. Kitchens explained the substance of the emails sought information about his background and experience but indicated it was not an endorsement. Kitchens testified that he responded truthfully to the questions Von Schmidt asked. He had no idea what Von Schmidt would do with the information he provided, other than what he represented – which was to educate himself.

Kitchens testified that Von Schmidt gave no indication he would turn the information into an endorsement. He confirmed the email said, "The results of this poll will be published without any recommendation as it is intended solely as a voter education tool, not an endorsement." Kitchens did not know what Von Schmidt meant by "publish" and what medium that would be in. He never asked Von Schmidt to publish newspaper ads or mailers to endorse him and did not give Von Schmidt instructions on what to do with the information he provided. Kitchens denied giving Von Schmidt any information regarding his campaign's needs or plans. He further denied giving consent or approval or even seeing the published materials before they came out.

Kitchens said he only learned of them when a friend contacted him and told him to look in the newspaper. Kitchens was surprised that someone ran the ad encouraging people to vote for him, because when he responded to the questionnaire, it indicated there would be no recommendation. Kitchens did not report Von Schmidt's newspaper ads or mailers as a contribution because he did not have anything to do with it and had no idea how much Von Schmidt spent. Since it noted that Von Schmidt paid for it and it was not coordinated with any campaign, Kitchens was unaware of any costs he would have to report. Kitchens testified the only information he provided to Von Schmidt not available to the public pertained to his father's Air Force service, but that information was not reflected on the printed materials.

Kitchens agreed the publications contained an endorsement for him but did not know if Von Schmidt should have reported that expenditure to him. Kitchens explained that if he had approved Von Schmidt's advertising materials it would have said, "political ad paid for by Travis Kitchens." He understood the phrase "not coordinated with any campaign" meant Von Schmidt did not ask for Kitchens's permission to run the ad. Kitchens again testified Von Schmidt did not make the expenditures for the newspaper ads and mailers with his prior consent or approval.

## III. Procedural History

### A. Motions for Directed Verdict

Von Schmidt moved for a directed verdict. He argued there was no evidence the money he spent constituted campaign contributions because there was no evidence of Kitchens's prior consent or approval. Instead, they constituted direct campaign expenditures made without the candidate's prior consent or approval, which meant there was no violation. The trial court denied the motion.

Wells also moved for a directed verdict on the issue of liability. He argued that a direct campaign expenditure was a campaign expenditure in violation of Texas Elections Code section 253.131. Specifically, Wells contended he was "entitled to a directed verdict on liability because [Von Schmidt] made a campaign expenditure, not a direct campaign expenditure as defined in the code." The trial court denied the plaintiff's motion for directed verdict.

### B. Jury Charge and Verdict

The jury charge contained the following question and instruction:

**<u>QUESTION NO. 1</u>**
Did Charles Von Schmidt make the expenditures for the newspaper ad and mailers he printed in support of Mr. Travis Kitchens during the 2018 runoff election for the 258th Judicial District Court of Polk, San Jacinto and Trinity Counties with the prior consent or approval of Travis Kitchens?

Communication between a person and a candidate, officeholder, or candidate[']s or officeholder[']s agent is not evidence that the person obtained the candidate[']s or officeholder['s] consent or approval for a

9

campaign expenditure made after the communication by the person on behalf of the candidate or officeholder unless the communication establishes that:

> (1) the expenditure is incurred at the request or suggestion of the candidate, officeholder, or candidate[']s or officeholder[']s agent;
> (2) the candidate, officeholder, or candidate[']s or officeholder[']s agent is materially involved in decisions regarding the creation, production, or distribution of a campaign communication related to the expenditure; or
> (3) the candidate, officeholder, or candidate[']s or officeholder[']s agent shares information about the candidate[']s or officeholder[']s plans or needs that is:
> > (A) material to the creation, production, or distribution of a campaign communication related to the expenditure; and
> > (B) not available to the public.

Von Schmidt did not object to the court's charge.

However, Wells objected to the charge, arguing this was a "campaign expenditure" as a matter of law under the *Osterberg* case. Wells contended the expenditure involved funds spent in support of a candidate and does not require consent, as opposed to a "direct campaign expenditure." During the charge conference, Wells argued that under section 253 this was an expenditure in violation of the code, it exceeded $1,000, and because Von Schmidt never [timely] filed a report, it constituted a violation of section 253.131. Wells also moved for a directed verdict, contending this constituted a "campaign expenditure" rather than a "direct campaign expenditure." He further argued that the language in the charge did not accurately reflect the law, because it assumed a "direct campaign expenditure" as opposed to a "campaign expenditure." Wells did not specifically object to the charge

10

instruction regarding communications and consent on the basis that it incorporated section 251.0015, which became effective only after the cause of action accrued.

Wells submitted an alternate proposed Question No. 1, which asked, "Do you find that Charles Von Schmidt individually, knowingly made or authorized one or more campaign expenditures that were made either in opposition to John Wells or in support of Travis Kitchens?" The trial court overruled Wells's objections and refused his proposed question and instructions.

The jury answered "yes" to Question No. 1, then determined that Von Schmidt made total expenditures of $3,279.32 for the newspaper ads and mailers.

## C. Post-Verdict Motions

After trial, Von Schmidt filed a Motion for Judgment Notwithstanding the Verdict and Request to Set Aside Jury Findings[.]" In that motion, he argued: (1) the jury's answer to the question regarding prior consent and approval was against the great weight and preponderance of the evidence; and (2) there was no evidence to support this finding. The trial court entered judgment in favor of Wells, awarding the following: (1) actual damages of $4,558.64; (2) attorney's fees through trial of $12,500; (3) an additional $5,000 in attorney's fees in the event of Von Schmidt's unsuccessful appeal to this court; (4) $18,000 in the event of Von Schmidt's unsuccessful appeal to the Texas Supreme Court, broken into various stages; (5) costs of $907.09; and (6) post-judgment interest of 5% daily.

11

## IV. Standard of Review

Evidence is legally insufficient to support a jury finding when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016) (citation omitted). As the sole judges of the credibility of the witnesses and the weight to give their testimony, the jurors may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). "Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses." *Id.* at 820. But "they are not free to believe testimony that is conclusively negated by undisputed facts." *Id.* In our appellate review, we "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.*

When challenging the factual sufficiency of the evidence supporting an adverse finding on which the appellant did not have the burden of proof at trial, the appellant must demonstrate that there is insufficient evidence to support the adverse

12

finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 120 (Tex. App.—Beaumont 2005, pet. denied). When reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the jury's finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We only set aside a finding if it "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985).

Before measuring the sufficiency of the evidence, we first identify the standard against which the evidence is to be measured. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002). "[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (citations omitted). Where the trial court submits an erroneous definition or instruction over a proper objection, we measure the legal sufficiency of the evidence supporting the jury's finding against the charge that should have been given. *See St. Joseph Hosp.*, 94 S.W.3d at 530.

The trial court must submit to the jury the controlling questions, instructions, and definitions raised by the pleadings and supported by the evidence. *See Triplex Commc'ns v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995); *see also* Tex. R. Civ. P. 278. A trial court has broad discretion to fashion the charge, so long as it is legally correct.

13

*Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). We review a complaint regarding submission of jury questions for an abuse of discretion. *See Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021).

## V. Analysis

### A. Texas Election Code

We begin our analysis with the statutory definitions necessary to the resolution of this appeal. A "campaign expenditure" is "an expenditure made by any person in connection with a campaign for an elective office or on a measure. Whether an expenditure is made before, during, or after an election does not affect its status as a campaign expenditure." Tex. Elec. Code Ann. § 251.001(7). At the time this cause of action accrued, a "direct campaign expenditure" was defined as "a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure."[2] *Id*. 251.001(8). *See* Act of June 19, 1987, 70th Leg., R.S.,

---

[2] This section was amended effective September 1, 2019. *See* Act of June 19, 1987, 70th Leg., R.S., ch. 899 § 1, 1987 Tex. Gen. Laws 2995, 2997 *amended by* Act of June 14, 2019, 86th Leg., R.S., ch. 1127 § 1 2019 Tex. Gen. Laws 3186, 3186. The provision currently reads,

> a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure. A campaign expenditure does not constitute a contribution by the person making the expenditure to a candidate or officeholder if the expenditure is made without the prior consent or approval of the candidate or officeholder on whose behalf the expenditure is made. A campaign expenditure made in connection with a measure does not constitute a contribution by the person making the expenditure if it is not made as a political

14

ch. 899 § 1, 1987 Tex. Gen. Laws 2995, 2997 *amended by* Act of June 14, 2019,

86th Leg., R.S., ch. 1127 § 1 2019 Tex. Gen. Laws 3186, 3187. Finally, a "campaign

contribution" is defined as

> a contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure. Whether a contribution is made before, during, or after an election does not affect its status as a campaign contribution.

Tex. Elec. Code Ann. § 251.001(3). Of further note, when this cause of action

accrued, the Texas Administrative Code defined "a direct campaign expenditure" as

follows:

> (5) Direct campaign expenditure--A campaign expenditure that does not constitute a contribution by the person making the expenditure. A campaign expenditure is not a contribution from the person making the expenditure if:
> (A) it is made without the prior consent or approval of the candidate or officeholder on whose behalf the expenditure was made[.]

1 Tex. Admin. Code § 20.1(5) (2013) (Tex. Ethics Comm'n, Reporting Political

Contributions and Expenditures), *amended by* 45 Tex. Reg. 2155 (2020). The Texas

Supreme Court has likewise explained that "a direct campaign expenditure" is one

that is made without the candidate's consent or approval. *See Osterberg*, 12 S.W.3d

at 36 n.2) (citations omitted) (explaining that direct campaign expenditure is made

---

> contribution to a political committee supporting or opposing the measure.

Tex. Elec. Code Ann. § 251.001(8).

15

without the candidate's prior consent or approval). Accordingly, the critical distinction between a campaign contribution and a direct campaign expenditure is the candidate's consent or approval.

Section 253.131 provides a private cause of action for violations of Chapter 253. "A person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation *of this chapter* is liable for damages as provided by this section." Tex. Elec. Code Ann. § 253.131(a) (emphasis added). This is the section under which Wells sued Von Schmidt. Of note, Chapter 253 does not contain provisions limiting the amounts of direct campaign expenditures.[3]

However, Chapter 253 does limit the amount of contributions a judicial candidate may accept. When the cause of action accrued, section 253.155 provided:

(a) Subject to Section 253.1621, a judicial candidate or officeholder may not, except as provided in Subsection (c), knowingly accept political contributions from a person that, in the aggregate, exceed the

---

[3] In 2011, prior sections 253.061through 253.063 contained within Chapter 253 which required an individual to report direct campaign expenditures exceeding $100 were repealed. *See* Act of June 1, 1987, 70th Leg., R.S., ch. 899, § 1 1987 Tex. Gen. Laws 2995, 3008–09 *repealed by* Act of June 17, 2011, 82nd Leg., R.S., ch. 1009 § 6(2) 2011 Tex. Gen. Laws 2554, 2556. Sections governing reporting requirements for direct campaign expenditures are now codified in Chapter 254. *See* Tex. Elec. Code Ann. § 254.261(a) (requiring reporting of direct campaign expenditures exceeding $100). Section 254.231 likewise affords candidates a cause of action for Chapter 254's reporting violations. *See* Tex. Elec. Code Ann. § 254.231. Wells did not plead a cause of action pursuant to section 254.231 nor did he allege reporting violations in his petitions, and Von Schmidt pointed this out through his repeated objections during the trial.

16

limits prescribed by Subsection (b) in connection with each election in which the person is involved.

> (b) The contribution limits are:
>     (1) for a statewide judicial office, $5,000; or
>     (2) for any other judicial office:
>         (A) $1,000, if the population of the judicial district is less than 250,000[.]

*See* Act of June 16, 1995, 74th Leg., R.S., ch. 763, § 1, sec. 253.155, 1995 Tex. Gen. Laws 3956, 3958 *amended by* Act of June 2, 2019, 86th Leg., R.S., ch. 384 § 4 2019 Tex. Gen. Laws 699, 700.[4] In both his Original Petition and First Amended Original Petition, Wells alleged that the violation giving rise to the cause of action pursuant to section 253.131 was the money spent on the advertisement and mailers exceeding $1,000, "which is the maximum [contribution] allowed for the judicial race because the district has a population of less than 250,000." The plain language of the statute puts the onus on the candidate, rather than the donor, to refuse to accept contributions

---

[4] This section was amended effective June 2, 2019, and the provision currently states:

> (a) A judicial candidate or officeholder may not knowingly accept political contributions from a person that, in the aggregate, exceed the contribution limits prescribed by Subsection (b) in connection with each election in which the judicial candidate's name appears on the ballot.
> (b) The contribution limits under this section are:
>     (1) for a statewide judicial office, $5,000; or
>     (2) for any other judicial office:
>         (A) $1,000, if the population of the judicial district is less than 250,000[.]

Tex. Elec. Code Ann. § 253.155(a), (b)(1)-(2)(A).

exceeding $1,000. To recover under the chapter 253 cause of action pleaded, Wells still must establish the money spent by Von Schmidt was a political contribution and not a direct campaign expenditure. Von Schmidt's expenditures could only be characterized as a political contribution if the evidence was sufficient to show the expenditures were made with the candidate's approval or consent.

## B. The Charge: Measure of Sufficiency

At trial, Wells argued that Von Schmidt's expenditures were not a "direct campaign expenditure," instead it was a "campaign expenditure" that constituted a "campaign contribution." Wells argued the issue of consent should not come up at all, and under *Osterberg v. Peca*, the only issue was whether the expenditures were made in support of a candidate and if so, the amount of the expenditures. However, as explained above, critical to determining whether expenditures constitute a campaign contribution or a direct campaign expenditure and thus a violation of Chapter 253, is the candidate's "consent or approval." *See Osterberg*, 12 S.W.3d at 36 n.2; Tex. Ethics Comm'n Op. No. 331 (1996). Further, during pretrial, the parties agreed that the main issue that would be submitted to the jury was the issue of consent or approval of candidate Kitchens.

In the absence of a valid objection, we are to measure the sufficiency of the evidence against the charge submitted to the jury. *See St. Joseph Hosp.*, 94 S.W.3d at 530. Wells's repeated objections during the charge conference misstated the law

18

applicable to the case, and the alternate question he proposed did not accurately reflect the parties' dispute as pleaded or as the evidence suggested at trial. On appeal, Wells further counters the court's instruction regarding what communications could constitute evidence of consent was improper, arguing the statutory language it tracked contained in Texas Election Code section 251.0015 was not in effect at the time. However, Wells failed to separately object to this instruction during the charge conference on this basis. *See* Tex. R. Civ. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. . . . No objection to one part of the charge may be adopted and applied to any other part of the charge[.]").

Accordingly, we will measure the sufficiency of the evidence in this case against the charge the trial court submitted to the jury. *See St. Joseph Hosp.*, 94 S.W.3d at 530.

## C. Legal Sufficiency

We now turn to whether the evidence was legally sufficient to support the jury's finding that Von Schmidt made the expenditures for the newspaper ad and mailers in support of Kitchens with the prior consent or approval of Travis Kitchens. Evidence is legally insufficient to support a jury finding when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove

19

a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Crosstex*, 505 S.W.3d at 613. To prevail on a legal insufficiency complaint on which he did not have the burden of proof at trial, Von Schmidt must show no evidence supports the finding. *Croucher*, 660 S.W.2d at 58; *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied).

The emails between Von Schmidt and Kitchens established that Von Schmidt never told him that he was endorsing a candidate but rather "would be published without any recommendation as it is intended solely as a voter education tool and not an endorsement." Both Von Schmidt and Kitchens testified that Von Schmidt never asked for Kitchens's approval. Kitchens testified he had no knowledge of the newspaper ad or mailers until after they were published and was shocked by Von Schmidt's endorsement. Von Schmidt testified that he had no plans to endorse either candidate when he sent the emails to them. It was only after Kitchens answered the questions about his experience and Von Schmidt researched Wells's experience that Von Schmidt decided to endorse Kitchens, but Von Schmidt never advised Kitchens of this.

Likewise, when asked whether he had any reason to dispute that Von Schmidt was going to prepare the materials without making a recommendation, but upon seeing the differences in their qualifications, decided to take out the ads, Wells

20

responded, "Only my suspicions." Wells then agreed his suspicions were not evidence. When asked if there was any evidence besides the emails where Von Schmidt advised he would publish the results of the poll without any recommendations, Wells testified he "didn't see anything explicitly[.]"

While under the applicable standard of review for legal sufficiency, "'we credit evidence that supports the verdict if [a reasonable factfinder] could have done so and disregard contrary evidence unless [a reasonable factfinder] could not have done so.'" *Dall. Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 58 (Tex. 2015) (citations omitted). Using this standard, no evidence at trial established that Von Schmidt had the prior approval or consent of Kitchens when he printed the ad or mailers. *See Crosstex*, 505 S.W.3d at 613; *Croucher*, 660 S.W.2d at 58. Rather, the evidence conclusively established the opposite. *See Crosstex*, 505 S.W.3d at 613. Wells testified that by simply responding to Von Schmidt's email, which expressly stated the results of the polls would not be used to provide an endorsement, Kitchens fully cooperated. We conclude the evidence was legally insufficient to establish that Von Schmidt made the expenditures for the political ads with the consent or approval of Kitchens. *See id.* Thus, there is no evidence that the expenditures made by Von Schmidt constituted a campaign contribution in violation of Chapter 253 of the Texas Elections Code. We sustain Von Schmidt's sole issue. Having determined the

21

evidence was legally insufficient to support the jury's verdict, we need not address factual sufficiency as it would afford him no greater relief. *See* Tex. R. App. P. 47.1.

## VI. Conclusion

Because the evidence was legally insufficient to support a verdict that Von Schmidt acted with the candidate's consent or approval, we reverse the trial court's judgment and render judgment that Wells take nothing on his claims. We remand the case to the trial court to consider an award of attorney's fees reasonably incurred by Von Schmidt. *See* Tex. Elec. Code Ann. § 253.131(e) (providing that reasonable incurred attorney's fees may be recovered if judgment is rendered in defendant's favor).

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on February 1, 2021
Opinion Delivered January 13, 2022

Before Kreger, Horton and Johnson, JJ.