# Supreme Court of Texas

No. 20-0681

Columbia Valley Healthcare System, L.P. d/b/a Valley Regional
Medical Center,

*Petitioner*,

v.

A.M.A., A Minor, by and through his mother, Ana Ramirez, as
next friend and Ana Ramirez, Individually,

*Respondents*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued February 23, 2022**

JUSTICE YOUNG delivered the opinion of the Court.

Before respondent A.M.A. was born, nurses had observed his heartrate dropping to dangerous and even nondetectable levels for extended periods before they summoned the obstetrician. A.M.A. was deprived of oxygen for these periods because, as became apparent upon his delivery, the umbilical cord had become tightly wrapped around his neck. A.M.A. survived but was soon diagnosed with cerebral palsy. Following trial, a jury awarded a substantial amount for A.M.A.'s future

healthcare expenses. At petitioner's request, the district court applied the periodic-payments statute in the Texas Civil Practice and Remedies Code to the award of future medical expenses. We recently addressed that statute in *Regent Care of San Antonio, L.P. v. Detrick*, 610 S.W.3d 830 (Tex. 2020). But because we decided that case after the district court rendered judgment, neither the court nor the parties had the benefit of its guidance. We conclude that the district court erred in how it structured the periodic payments and remand to that court for further proceedings that will allow it, in light of *Regent Care* and today's decision, to render a judgment that complies with the periodic-payments statute.

## I

Ana Ramirez, A.M.A.'s mother, went to Valley Regional Medical Center for premature labor—she was 33-weeks pregnant—after her water broke on a Friday evening.[1] Her obstetrician, Dr. Martinez, instructed the nurses to monitor the baby's heartbeat, then went home for the night, leaving the mother and her unborn baby in the nurses' hands over the weekend. A.M.A.'s heartbeat in utero dropped for about two minutes shortly after midnight on Sunday. Twenty minutes later, his heartbeat dropped for seven minutes. Finally, after another twenty minutes, the baby's heartbeat dropped to the point where the nurses could not detect it. Even then, the nurses did not call Dr. Martinez— they waited for another twenty minutes.

---

[1] The petitioner is Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center. We refer to it as "Valley Regional."

After the nurses called the doctor, it took him about nineteen minutes to arrive at Valley Regional. His ability to act was impeded because no ultrasound had been done, even though he had ordered a "stat" ultrasound when the nurses called him. The ultrasound technician arrived only after Dr. Martinez did. Once the ultrasound was started, the doctor saw that there was minimal heart activity, ordered an emergency c-section, and proceeded immediately to the operating room. After further logistical delays, including obtaining Ramirez's signature on additional forms, A.M.A. was finally delivered. The umbilical cord had become tightly wrapped around his neck. Because of the lack of oxygen to his brain, A.M.A. was later diagnosed with cerebral palsy.

Ramirez sued Valley Regional on behalf of A.M.A., alleging that the nurses' delay caused A.M.A.'s cerebral palsy. At the close of evidence, Valley Regional's proposed jury charge asked the court to question the jury about A.M.A.'s life expectancy and about the annual amount of any future healthcare expenses. The trial court denied Valley Regional's proposed charge and Valley Regional objected to the denial. The jury found for A.M.A. and awarded $10,330,000, divided as follows: $62,000 for past healthcare expenses, $9,060,000 for future healthcare expenses until A.M.A. turns 18, and $1,208,000 for future healthcare expenses after he turns 18.

Before trial, Valley Regional had moved the trial court to structure any jury award of future medical expenses as periodic payments under the periodic-payments statute, which is codified as Texas Civil Practice and Remedies Code Chapter 74, Subchapter K.

When properly invoked, the periodic-payments statute requires the trial judge to order that the award for future healthcare expenses be paid "in whole or in part in periodic payments rather than by a lump sum payment." Tex. Civ. Prac. & Rem. Code § 74.503(a).

About a month after the jury trial concluded, the trial judge held a hearing to determine how to form the court's judgment, including how to structure periodic payments and how to ensure that any required periodic payments would be made. Valley Regional's principal position was that, under the statute and the Constitution, separate questions about life expectancy or annual medical expenses should have been submitted to the jury. Despite the lack of separate questions, however, evidence presented at the trial had addressed these topics. A.M.A.'s expert, Dr. Willingham, testified that A.M.A.'s life expectancy was thirty-two years. Valley Regional's experts testified that A.M.A.'s life expectancy was likely up to age seven or eight, but that he was "highly unlikely" to live past age ten. Each party presented annual healthcare costs that tracked their different life-expectancy evidence. Valley Regional presented evidence of annual healthcare costs of $604,000 per year and for its expert's opinion that A.M.A. had five years of life remaining. A.M.A.'s expert submitted life-care plans that included annual medical costs to age eighteen, and from that age to "end of life" at age thirty-two.

A.M.A. noted some of this evidence at the hearing and in subsequent briefing about the structure of the periodic payments. The district court found A.M.A.'s first proposed judgment insufficiently clear and directed A.M.A. to revise it. The district court repeatedly offered

4

Valley Regional the chance to provide its own proposed judgment, including how it would structure the periodic payments, but Valley Regional agreed only to offer objections to A.M.A.'s proposed judgment, which it did. About three weeks later, the trial court held a hearing on A.M.A.'s second proposed judgment, which included modifications and clarifications to the proposed structure for periodic payments.

A.M.A. then submitted its third proposed judgment and Valley Regional submitted its objections. The trial court signed A.M.A.'s proposal as its final judgment, which ordered the award structured as follows: (1) five periodic payments of $604,000 from a funded bank account, to begin on A.M.A.'s "fourth birthday, which will be on October 27, 2018, and the payments shall continue on his birthday each year through his 8th birthday on October 27, 2022," and (2) a lump-sum payment of the remaining $7,310,000 to a special-needs trust, which allows funds to be used to maintain good health, safety, and well-being, in addition to medical expenses. In the event of A.M.A.'s death, the special-needs trust mandates that any remaining principal and income in the trust revert to his heirs, which would be his father and mother. The district court also awarded prejudgment and postjudgment interest.

After the trial court signed the judgment, Valley Regional requested findings of fact and conclusions of law concerning the periodic payments. The district court denied that request. Valley Regional also challenged the judgment through a series of other motions, each of which the trial court denied.

Valley Regional perfected a timely notice of appeal and brought its case to the Thirteenth Court of Appeals. In multiple issues, it raised

5

three main challenges to the district court's judgment. First, it challenged the legal and factual sufficiency of the evidence for medical liability, again predicated on causation. Second, it claimed that it had been denied its right to a jury trial, on the ground that life expectancy and annual medical expenses should have been submitted to the jury, as Valley Regional repeatedly asked. Finally, it contended that the periodic-payments statute is ambiguous and that the trial court had improperly applied that statute in several respects.

The court of appeals overruled each of Valley Regional's issues and affirmed the judgment of the district court.[2] We granted Valley Regional's subsequent petition for review.

## II

We granted this case to further address the complications that inhere in a trial court's duty under the periodic-payments statute. We addressed the statute most recently in *Regent Care*. Notably, the trial in this case predated that decision, and we believe that proceedings in the district court would have been different had our opinion been available, which informs our decision to remand the case to that court. *Regent Care* does not resolve every issue presented here, however, so we begin by laying out the statute and how we addressed it in *Regent Care*, and then turn to the issues presented here.

## A

The heart of the periodic-payments statute is Texas Civil Practice and Remedies Code § 74.503, which provides that "[a]t the request of a

[2] 640 S.W.3d 867 (Tex. App.—Corpus Christi–Edinburg 2020).

6

defendant physician or health care provider or claimant, the court *shall* order that medical, health care, or custodial services awarded in a health care liability claim be paid in whole or in part in periodic payments rather than by a lump-sum payment." *Id.* § 74.503(a) (emphasis added). "At the request of a defendant physician or health care provider or claimant," moreover, "the court *may* order that future damages other than medical, health care, or custodial services . . . be paid in whole or in part in periodic payments rather than by a lump sum payment." *Id.* § 74.503(b) (emphasis added). The statute further provides that:

> (c) The court shall make a specific finding of the dollar amount of periodic payments that will compensate the claimant for future damages.
>
> (d) The court shall specify in its judgment ordering the payment of future damages by periodic payments the:
>
>> (1) recipient of the payments;
>>
>> (2) dollar amount of the payments;
>>
>> (3) interval between payments; and
>>
>> (4) number of payments or the period of time over which payments must be made.

*Id.* § 74.503(c)–(d).

The periodic payments are to be made "to the recipient of future damages at defined intervals." *Id.* § 74.501(3). Such "[p]eriodic payments, other than future loss of earnings, terminate on the death of the recipient." *Id.* § 74.506(b). Finally, "[f]or purposes of computing the award of attorney's fees," the court must reduce the periodic payments

7

to present value "based on the claimant's projected life expectancy," *id.* § 74.507.

We first interpreted and applied the periodic-payments statute in *Regent Care*. We held that the "court may order that an award of future medical expenses be paid periodically either in whole or in part," but emphasized that the total amount awarded must be the amount that *the evidence* shows will compensate the claimant for future damages. 610 S.W.3d at 837. Further, when the trial court orders periodic payments, it "shall specify the amount, number, timing, and recipient of those [periodic] payments in its judgment." *Id.*

To support such a judgment, the party requesting the periodic-payments order must identify "for the trial court evidence regarding each of the findings required by section 74.503 . . . ." *Id.* Because these findings are not indispensable to *the claim itself*—that is, the underlying medical-liability claim—the trial court may need to receive additional evidence if the record does not already contain sufficient evidence to justify a decision under the statute. *Id.* Any such evidence that the trial court receives, of course, may not contradict what the jury found. *Id.* at 837–38. After all, the statute "gives the trial court no discretion to craft its own award of damages inconsistent with the jury's verdict." *Id.* at 838. In structuring the award, the trial court must also identify evidence to support the amount it divided between any lump-sum and periodic payments. *Id.* at 837.

**B**

We now turn to the issues that Valley Regional brings to this Court.[3] Valley Regional repeatedly asked the district court to submit life expectancy and annual medical expenses as specific questions to the jury. The district court repeatedly declined to do so. Valley Regional properly preserved its objections to each denial, and now contends that these denials violated both the Texas Constitution and the periodic-payments statute.

We reject Valley Regional's constitutional challenge. Like any litigant, Valley Regional certainly had a right under the Texas Constitution to a jury determination of every fact essential to the resolution of the claims brought against it. *See, e.g.*, *Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 144 (Tex. 2018). But A.M.A.'s *claim* remains one for medical malpractice, and Valley Regional received a jury trial on that underlying claim: whether its negligence proximately caused A.M.A.'s injuries.

Additionally, as we detailed above, the jury heard evidence on the requested questions from experts. Both parties' experts testified

---

[3] Before presenting its periodic-payments challenges, Valley Regional's briefing also challenged the legal sufficiency of the evidence to sustain the jury's liability findings. A.M.A.'s burden was to put on evidence sufficient to show that Valley Regional's negligence proximately caused A.M.A.'s injuries. We have reviewed the record and find no reversible error in the lower courts' refusal to sustain Valley Regional's challenge to the verdict. *See, e.g.*, *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (evidence in a medical-malpractice case is legally sufficient when it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions") (citation omitted). "[F]urther discussion of the[se] issues would not add to the jurisprudence of the State. In reaching this conclusion, we express no opinion on the court of appeals' reasoning." *Regent Care*, 610 S.W.3d at 839.

9

concerning life expectancy and annual healthcare expenses. That evidence necessarily formed part of the jury's assessment of damages. The judge, in turn, was required to base her orders concerning the award structure on the evidence presented at trial.[4] The Constitution does not require a jury to go further and allocate *how* or *when* its award will be paid, which are the points that form the basis of Valley Regional's objection. Finally, the periodic-payments statute does not implement a constitutional guarantee. It instead represents a legislative choice to provide healthcare providers an option, subject to the statute's provisions, to pay damages awards periodically rather than in a lump sum. Absent the statute, the entire damages award would be due upon judgment.

A jury may still be required, of course, if a *statute* so requires, even if the Constitution does not. But as we indicated in *Regent Care*, it is not incumbent upon the court to submit granular questions relating to the proper structuring of periodic payments to the jury. *See* 610 S.W.3d at 837 (recognizing the court's discretion to make decisions regarding the award's structure). The statute does not require the jury to make findings of life expectancy or an annualized assessment of medical expenses. *See* Tex. Civ. Prac. & Rem. Code § 74.503. Rather, as we repeatedly noted, the statute expressly directs "the court," under specified conditions, to structure the award as periodic payments (or, if

---

[4] As we explain below, the trial court's judgment constituted an abuse of discretion—but the error was not traceable to an improper failure to submit questions to the jury.

appropriate, partly as periodic payments and partly as a lump sum paid immediately). *Id.*; *Regent Care*, 610 S.W.3d at 837.[5]

Subsections 74.503(c) and (d) require the court to make specific findings on the dollar amounts for "future damages." *Regent Care* interpreted these provisions as obligating the party that requests the periodic payments to "identify for *the trial court* evidence regarding each of the findings required by section 74.503." 610 S.W.3d at 837 (emphasis added). The *trial court's* duty to structure the jury award into periodic payments or a lump sum based on life expectancy and annual medical expenses means that the statute, like the Constitution, does not require the *jury* to make those specific determinations. At the same time, a trial court retains the discretion, based on the circumstances of the case, to present questions to a jury that may assist the court in its discharge of its duty under the statute. As we discuss below, the *court* must have evidence to structure any periodic-payments award; presenting questions to the jury may eliminate doubts in some cases or protect a resulting judgment from reversal in others. We hold only that a court's refusal to submit such questions, here or in other cases, is not in and of itself error.[6]

---

[5] Neither does Texas Rule of Civil Procedure 278 require that these questions be submitted to the jury. We have interpreted this rule to require submitting "controlling questions" to the jury. *Triplex Commc'ns v. Riley*, 900 S.W.2d 716, 718 (Tex. 1999). For the same reasons that the statute does not require the jury to make these findings, neither does the rule.

[6] We express no opinion about whether circumstances could ever make it reversible error for a trial court to refuse a party's request that it instruct the jury to answer specific questions on these or related topics.

11

## C

Although there is no general need for (or entitlement to) the court's submission of granular questions to the jury in the way that Valley Regional contends, that does not mean that a trial court is unconstrained in structuring a periodic-payment award. To the contrary, the entire structure of the statute makes it essential that the trial court rely on and point to probative *evidence* regarding its disposition. *See Regent Care*, 610 S.W.3d at 837. In this case, such evidence must support the court's decision to have only five years of periodic payments, to place the rest of the amount (some 70% of the total) in a lump sum, and to place that lump sum in a special-needs trust that is structured as this one was. *See id.* ("In other words, any division between lump-sum payments and periodic payments of damages that will be 'incurred after the date of judgment' must be founded in the record.").[7]

Particularly given the absence of any specific jury findings here, we see nothing in the trial court's or the court of appeals' decisions—or

---

[7] Valley Regional has not challenged the use of special-needs trusts as tools to facilitate periodic payments of future damages awarded under Chapter 74. Accordingly, while we have no reason to doubt the general propriety and importance of such trusts, this case provides no opportunity for us, or for the lower courts on remand, to further opine. On remand in this case, therefore, a special-needs trust remains an available tool for the district court's use. Whether it uses such a trust or anything else, the judgment on remand must accord with the evidence and the verdict and comply with the statute's commands. Valley Regional may not challenge a proposed judgment on remand simply for using a special-needs trust that otherwise satisfies the statutory requirements, but it remains free to challenge any specific features of the judgment—including the terms of a special-needs trust—that would violate or evade the statute or our decision.

A.M.A.'s briefs—that shows how the evidence justifies the way the trial court ordered the periodic payments to be structured. We identify three key and interrelated problems.

First, the trial court's periodic-payments order contradicts the jury's verdict. The jury awarded an amount for the first eighteen years of life and then went beyond that to award a smaller (but still substantial) award for A.M.A.'s expenses after he turned eighteen. The court, however, limited periodic payments to only five years (up through A.M.A.'s eighth birthday). To calculate those five years of payments, the court relied on the testimony of Valley Regional's expert, who presented evidence that A.M.A. would require $604,000 in annual medical expenses. The rest of the award—everything except for those five years of periodic payments—would be paid immediately to an irrevocable special-needs trust. By only requiring Valley Regional to pay periodic payments up to A.M.A.'s eighth birthday, the trial court contradicted the jury findings, which awarded a far larger amount to last until his *eighteenth* birthday (then proceeded to assume at least some expenses *beyond* that time). The verdict contemplates the need to go beyond age eight. The statute affords considerable discretion to the trial court in structuring periodic-payments awards, but the court has no discretion to "contradict the jury's findings on any issues submitted to it." *Regent Care*, 610 S.W.3d at 837–38.

Second, the lump-sum requirement, with the remainder of the award going to the special-needs trust, violates the statute's requirement that "[p]eriodic payments, other than future loss of earnings, terminate on the death of the recipient." Tex. Civ. Prac. &

13

Rem. Code § 74.506(b). For the five annual payments, the judgment correctly recites that, "[i]n the event that [A.M.A.] dies during the five year period in which the periodic payments are to be paid, [Valley Regional's] payment obligation terminates and [Valley Regional] is entitled to withdraw the remaining funds in escrow." But the *rest* of the award, despite being for future medical expenses, is structured to evade that requirement. Under the terms of the judgment, the balance of the special-needs trust will *not* be restored to Valley Regional if it is not used for A.M.A.'s medical expenses; instead, it goes to A.M.A.'s parents. Beyond being an abuse of discretion to structure periodic payments in a way that contravenes the jury's verdict, it is an abuse of discretion to impose a lump-sum payment without evidence supporting the need for an immediate payment of a lump-sum payment.

Finally, even aside from the possible violation of § 74.506, the trial court erred by pointing to no evidence that could justify the division between periodic payments and a lump sum. It is true, and *Regent Care* acknowledged, that the statute authorizes a trial court to order only *part* of the award to be paid in periodic payments. But only a particular kind of *evidence* unlocks that discretion, which is not unfettered. If, "for example, the record shows a lump-sum payment is warranted to meet expenses expected soon after trial," 610 S.W.3d at 837, or if there is evidence that specific amounts can be expected to occur but in irregular patterns, then a court may—with caution—be justified in withdrawing a set amount from periodic payments. The district court relied on no such evidence of current expenses (including attorney's fees due) or immediate medical needs here. As the award stands, the trial court

14

pointed to no evidence in the record to justify why *any* amount should be extracted from the periodic-payment amounts and made payable as a lump sum. For this reason, too, therefore, the lump-sum award—diverted into a trust that will revert to plaintiffs, and not Valley Regional, if not used for the specified purposes—ignores the statute's text and structure.

## D

The trial court's order amounts to an abuse of discretion. But our only decision addressing the periodic-payments statute was released *after* the trial court made its decision. Neither the parties nor the court had the benefit of our analysis in *Regent Care*, which makes the district court's order and the parties' presentation of their arguments more understandable.

We therefore remand the case to the district court, which should have another chance to structure the award—and a *first* chance to do so based on *Regent Care* and today's decision. Both parties are entitled to explain, and support with existing evidence, why a particular structure is sensible. The parties should have the opportunity to address whether the presentation of additional evidence that does not contravene the jury's verdict would be necessary or helpful to the trial court in discharging its task of rendering a lawful judgment that complies with the periodic-payments statute.[8]

_____

[8] Valley Regional also challenged the award of attorney's fees. Tort plaintiffs typically must pay their own attorney's fees from the award. When the periodic-payments statute applies, defendants may delay (and in the case of an untimely death of the plaintiff, avoid) paying some portion of the judgment. As we stated above, a defendant would have to pay the entire judgment up front if the statute did not clearly require otherwise. We would

15

### III

The judgment below is reversed in part and the case is remanded to the district court for further proceedings that will allow it to render a judgment that complies with the periodic-payments statute, including the statutory provision governing calculations necessary for the payment of attorney's fees. In all other respects, the judgment below is affirmed.

Evan A. Young
Justice

**OPINION DELIVERED:** April 22, 2022

---

expect similar textual clarity if the legislature sought to displace or modify how, when, or in what amount a client could or must pay his attorney's fees. Nothing in the statute points to such a change, and the only part of the statute to mention fees confirms the expectation that they will be paid at the outset. *See* Tex. Civ. Prac. & Rem. Code § 74.507. Respondents' obligation to pay their attorney's fees, therefore, is one kind of evidence that the court should consider on remand when determining how much of the total award should be paid as a lump sum.